**UNITED STATES of America, Appellee,**

v.

**Loren Francis BELLRICHARD, Appellant.**

No. 92–2911.

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 17, 1993.

Decided June 7, 1993.

Scott F. Tilsen, Minneapolis, MN, argued (Scott F. Tilsen and Virginia G. Villa, on brief), for appellant.

Michael William Ward, Minneapolis, MN, argued (Thomas B. Heffelfinger and Elizabeth L. De La Vega, on brief), for appellee.

Before BOWMAN, WOLLMAN, and HANSEN, Circuit Judges.

BOWMAN, Circuit Judge.

Loren Bellrichard appeals from his conviction on each of four counts of sending threatening communications through the mail in violation of 18 U.S.C. § 876 (1988).[1] Bellrichard was charged with two counts of bombing a building used in interstate commerce and twenty-three counts of sending threatening communications through the mail. Prior to trial, the District Court[2] granted the government's motion to dismiss nine of the threatening-communications counts. The jury found Bellrichard not guilty of the two bombing counts[3] and guilty of five of the remaining fourteen threatening-communications counts. The court granted Bellrichard's motion for judgment of acquittal on one of these five counts and denied the motion as to the remaining four counts. Bellrichard was sentenced to a term of imprisonment of fifty months, supervised re-

---

1. 18 U.S.C. § 876 (1988) provides in relevant part:

    Whoever knowingly so deposits [in any post office or authorized depository for mail matter] or causes to be delivered [by the Postal Service according to the direction thereon] ... any communication with or without a name or designating mark subscribed thereto, addressed to any other person and containing ... any threat to injure the person of the addressee or of another, shall be fined not more than $1,000 or imprisoned not more than five years, or both.

2. The Honorable Diana E. Murphy, Chief Judge, United States District Court for the District of Minnesota.

3. Bellrichard was charged with bombing the homes of Judge James Mork, a state district court judge, and Judge William Nierengarten, a county court judge. Although he was acquitted

of those charges, his guidelines sentence was enhanced for obstruction of justice based on threatening communications, made during and after his trial, in which he alludes to the bombings.

For example, after Bellrichard was arrested, the District Court found that Bellrichard wrote the prosecutors: "Now drop all the charges or God will drop you." "If you don't [drop the charges] then do not blame me if and or when the shit hits the fan. 'Boom'! may go your house if you do not listen to my wise words like Bill Nierengarten and Jim Mork foolishly didn't." *United States v. Bellrichard*, 801 F.Supp. 263, 266 (D.Minn.1992) (alteration in original).

After Bellrichard's conviction, while he was awaiting sentencing, he wrote the following to the District Court: "You either be merciful or you'll be dead." "You have until November (before Thanksgiving) to save your home and ass by freeing me totally without any restrictions. I have spoken. Give me liberty or God will give you death!" *Id.*

lease for three years, and a special assessment of $200.00.

The correspondence involved in the four counts of conviction falls into a pattern. Bellrichard has an extensive history of writing to people who are involved in issues that he is interested in, whether or not Bellrichard is personally involved. He took an interest in a heavily publicized case involving the prosecution of some juveniles as adults, and he sent a postcard to Nancy Evans, the county attorney.[4] Bellrichard also took an interest in the proposed building of a garbage incinerator, and mailed a postcard to Lee Leubbe, who was on the County Board of Commissioners.[5] Bellrichard was charged with harassment in connection with a movie theatre incident, and he wrote a letter to the county attorney involved in prosecuting the charges and to the police officers involved in the incident.[6] Finally, Bellrichard sent a

4. The following unsigned postcard was mailed to Nancy Evans and was the basis for count IV of the indictment:

> The best way you can serve the interests of this community is to leave town or else quit your job! If you don't quit you've got 3 choices: leave town, go to prison eventually for fucking up, or probably get killed by somebody you prosecuted. If any kid gets prosecuted again as an adult in Mower County Court I do guarantee you that you'll spend the rest of your life behind bars. And *God* damn you, I mean it! Be merciful or quit.
> If Mathew Schrom or Anthony Holtorf gets sentenced to an adult prison you will *die!* Mark my words.
> Smoke grass & mellow out you red-necked old whore! Fuck the law, and you too!
> Some day I'll *get* you "high"!
> What you did was violate the legal constitutional rights of those kids (Schrom & Holtorf) to be tried in a juvenile court. If they go to prison you will be dead in less than 7 months—so help me God! *God* will strike you dead! I write you this to save your life, Nancy, as well as the future of all those 3 juveniles whose lives you are trying to totally ruin by sending to many years in prison. To *rehabilitate* is not to punish! The purpose of the juvenile system is, *theoretically* (tho obviously it exists only to punish, too, unfortunately) to rehabilitate. You violate those kids rights to a future by imprisoning them. How demented are you, anyway? Christ preached mercy! Why must you persist in imprisoning (for decades) kids that need a chance!?! The laws ought to be made more lenient. Pat Piper, you know, does have a way of getting legislation passed to *lower* the penalties for "crime". *It's time to be merciful.* Otherwise, people will deal harshly with you in the future. Think this over!
> Government Ex. 10–2.

We refer to Bellrichard's letters by the government's exhibit numbers, wherein the letters were transcribed for legibility purposes. We have compared copies of the actual letters with the transcriptions and reproduce them in this opinion (with grammatical, spelling and other errors not noted) as accurately as possible. Parentheses, brackets and emphasis appear as in the original.

5. This unsigned postcard was mailed to Lee Leubbe and was the basis for count VII of the indictment:

> Let's Piss on Lee Leubbe
> Dump her in the incinerator!
> Praise GOD, you BITCH!
> The 1st thing that ought to get burned in that proposed incinerator is your *God*-damned dead body, you ugly little cunt! You'd best begin opposing an incinerator in ol' Winona or else you may get your ignorant ass burned. And you'd better get the rest of those stupid fucking commissioners to oppose and stop that damn incinerator—just to save your worthless God-damned life, you bitch! God damn you—I mean it!
> Government Ex. 15–1.

6. This letter was the basis for count IX of the indictment:

> You *treat all the citizens with kindness* or somebody will probably kill you. I'm trying to save your lives.
> You listen up or every one of you won't live long!
> I'm a man of peace, but you fuckers are pissing me off!
> If I'm ever refused service (like I've been for the past 19 months) at Sterling Theater and Oak Park Cinema I'm turning you fuckers over to the Feds.
> Dear Boys: John Carlin, Larry Mocykens & Gehl Tucker: I'm turning this matter over to the *F.B.I.* who will now proceed to investigate the following: (1) Why you are fully in violation of Mr. BellRichard's 1st Amendment Rights to Freedom of Speech; (2) Why the investigating officers did *not* seek Mr. BellRichard's views on the matter and (3) why the county attorney's office waited 11 months to bring this case to court!
> Mr. BellRichard is a former military policeman in the U.S. Army. His former world history high school teacher [Don Carlson] is head of the Regional *F.B.I.* office in Rochester, Minnesota. Mr. BellRichard is not seeking a lawsuit against you. [He *is* tempted to form an army which will line you 3 motherfuckers up against a wall while he personally pulls the trigger!] However, Mr. BellRichard will resist the temptation (maybe). The things that disgust Mr. BellRichard the most are (1) your

postcard to Judge Michael Seibel, who had issued a search warrant for the homes of Bellrichard and his mother in connection with the bombing incidents for which Bellrichard later was charged.[7]

Bellrichard does not deny that he wrote and mailed the postcards and letter. His only contention is that his convictions must be reversed as violative of his First Amendment right to freedom of speech because none of the language in his correspondence constituted a "true threat." Bellrichard likens his case to that of the eighteen-year-old youth in *Watts v. United States*, 394 U.S. 705, 89 S.Ct. 1399, 22 L.Ed.2d 664 (1969), who had just received his draft card and at a rally in Washington, D.C. said, "If they ever make me carry a rifle the first man I want to get in my sights is L.B.J.," to which remark the crowd laughed. *Id.* at 706, 707, 89 S.Ct. at 1401, 1401. He was convicted under 18 U.S.C. § 871 for threatening the life of the President (§ 871 uses language substantially similar to that of § 876, but is limited to threats aimed at the President). The Supreme Court reversed Watts's conviction, agreeing with his argument that his remark was not a threat but only "a kind of very crude offensive method of stating a political opposition to the President." *Watts*, 394 U.S. at 708, 89 S.Ct. at 1402. The Court concluded that "[t]aken in context, and regarding the expressly conditional nature of the statement and the reaction of the listeners, we do not see how it could be interpreted otherwise." *Id.*

We find significant differences between *Watts* and the present case, and we have no difficulty in finding that Bellrichard's correspondence does not fall within the protection of the First Amendment. In *Chaplinsky v. New Hampshire*, 315 U.S. 568, 571–72, 62 S.Ct. 766, 768–69, 86 L.Ed. 1031 (1942), the Supreme Court made it clear that speech may be regulated if it does not in any sense contribute to the values of persuasion, dialogue, and the free exchange of ideas that the First Amendment was designed to advance. When determining whether an alleged threat falls outside the realm of protected speech, it is important to focus on the context of the expression. *Watts*, 394 U.S. at 708, 89 S.Ct. at 1402; *see also Martin v. United States*, 691 F.2d 1235, 1240 (8th Cir. 1982), *cert. denied*, 459 U.S. 1211, 103 S.Ct. 1207, 75 L.Ed.2d 447 (1983).

Initially, we note that all Bellrichard's correspondence at issue here was sent to the recipients' home or work addresses. As a general proposition, correspondence of this sort delivered to a person at home or at work is somewhat more likely to be taken by the recipient as a threat than is an oral statement made at a public gathering, which was the situation in *Watts*. Although the govern-

---

God-damn incompetence and (2) your God-damn arrogance. You'd best see Mr. Carlson so he can inform you you've broken federal law.
Other side please.
And you God damn bastards on the police force had better enforce the 1964 Civil Rights Act [public accomadations section] which states that it is a federal crime for anybody like Tim Cleland of Sterling Theater (or Doug Owens of Oak Park Cinema) to refuse service to a member of the paying public. Discrimination is a *God*-damn crime and so far you 3 have acted like a bunch of fuckin' morons! Fuck you bastards! You ought to be shot—but I believe in mercy! But don't push your luck anymore!
BellRichard means "Beautiful Powerful Ruler" you God damn Cocksuckers! And God bless you! Loren BellRichard.
Government Ex. 22–1.

**7.** This unsigned postcard was the basis for count XVI of the indictment:

To the bought Judge: Michael Seibel
Boycott Hormel Products.
I had a dream that you assholes in crooked law enforcement tried to jail me again this coming winter illegally as usual. If you do—All I can say is that God will strike all of you dead while I'm in jail. Shitheads like you-all God eventually destroys!
*God* bless you. Don't ever fuck with me again and God will let you live.
Dear Michael: You, Nierengarten, Mork, and Evans ought to all go to prison. Being jailed is what you deserve but, if you persist, being shot is what you'll all get. I have tried to warn you all to be merciful in the past because I love all of you. If you keep oppressing the people the people will bury you-all. Don't ever stop anybody ever again from saying anything that he (or she) wishes to say. You, Mork and Evans are lame ducks, too, along with Nierengarten. Mark my words!
Government Ex. 3–16.

ment agreed to save time at trial by not presenting evidence of the recipients' reactions to the letters, we suspect that, unlike the crowd at the anti-war rally in *Watts,* the recipients did not laugh when they read Bellrichard's messages.

■ It is necessary, of course, for us to review each piece of correspondence that Bellrichard was convicted for sending. Although Bellrichard's postcard to Nancy Evans contained his opinion about the public issue of whether certain juvenile defendants should be sentenced as adults, a person may not escape prosecution for uttering threatening language merely by combining the threatening language with issues of public concern. *See United States v. Lincoln,* 589 F.2d 379, 382 (8th Cir.1979) (per curiam) (defendant's letter contained criticism of the judicial process, but it was an issue of fact for the jury to decide whether letter was threatening, and defendant's conviction did not violate the First Amendment). There are several parts of Bellrichard's postcard to Nancy Evans that a jury reasonably could view as a "true threat" and thus outside First Amendment protection. He wrote that if the two juveniles in question were sentenced to an adult prison "you will die," and "[i]f they go to prison you'll be dead in less than 7 months—so help me God!" A threat may be considered a "true threat" even if it is premised on a contingency. *See United States v. Howell,* 719 F.2d 1258, 1260–61 (5th Cir.1983) (hospital patient's statement that he would kill the President if released was a true threat), *cert. denied,* 467 U.S. 1228, 104 S.Ct. 2683, 81 L.Ed.2d 878 (1984). Bellrichard's conviction for sending the postcard to Nancy Evans does not violate the First Amendment.

■ Bellrichard's postcard to Lee Leubbe, a Winona County, Minnesota, Commissioner, allegedly written to express his opposition to the building of a proposed garbage incinerator, clearly contained language that a jury reasonably could regard as a "true threat." He wrote, "You'd best begin opposing an incinerator in ol' Winona or else you may get your ignorant ass burned. And you'd better get the rest of those stupid fucking commissioners to oppose and stop that damn incinerator—just to save your worthless God-

damned life, you bitch!" Bellrichard contends that the language was so outrageous that it had to be political hyperbole and not a true threat. We are not persuaded by this argument. That correspondence containing threatening language is phrased in outrageous terms does not make the correspondence any less threatening. *See United States v. Mitchell,* 812 F.2d 1250, 1256 (9th Cir.1987) ("to dismiss threats merely because a person expresses himself in an outlandish, illogical manner may defeat § 871's purpose of apprehending people who potentially pose a threat to the President").

■ Nor does Bellrichard's threatening correspondence to Lee Leubbe escape prosecution on the ground that the threats are conditional upon the building of the proposed incinerator. *See Martin,* 691 F.2d at 1240 (threat to judge held to be true threat even though defendant incarcerated so threat was conditional upon his release). Moreover, Bellrichard's threats are not merely conditioned upon the completion of the incinerator because he also threatens violence if Lee Leubbe does not "begin opposing" the incinerator. The First Amendment affords no protection to those who utter direct threats of force and violence toward other persons. Accordingly, Bellrichard's conviction for writing the threatening postcard to Lee Leubbe must stand.

Bellrichard contends that the letter he mailed to the county attorney and the law enforcement officers concerning the theatre incident did not contain any true threats because it did not directly say that he intended to harm them. We disagree. The language that Bellrichard is "tempted to form an army which will line you 3 motherfuckers up against a wall while he personally pulls the trigger" is a sufficiently direct suggestion of violence to be viewed by a reasonable person as a true threat to the recipients. As discussed above, the conditional nature or the outrageousness of the threats does not bring them within the protection of the First Amendment nor does it save the letters from violating § 876. Bellrichard's conviction for sending the letter to the law enforcement officers and county attorney also must stand.

The final postcard in issue was mailed by Bellrichard to Judge Michael Seibel. Here again Bellrichard argues that the postcard's language does not convey that he will carry out any of the threats therein. Further, he contends that the language cannot constitute a true threat because it is ambiguous. We reject these arguments. Bellrichard wrote, "Don't ever fuck with me again and God will let you live! ... Being jailed is what you deserve but, if you persist, being shot is what you'll all get." Bellrichard's conviction for writing and sending this postcard does no violence to the First Amendment.

Bellrichard concludes his brief by citing *United States v. Barcley*, 452 F.2d 930, 933 (8th Cir.1971), in support of his argument that because all the correspondence contains language that is susceptible to two interpretations, one threatening and the other non-threatening, the government must submit proof to remove the ambiguity or the trial court must direct a verdict of acquittal. We reject this argument. It is of course true that we have a duty to decide whether the language of a particular communication, viewed in textual context and also in the context of the totality of the circumstances in which the communication was made, affords an evidentiary basis upon which a reasonable

jury could find the defendant guilty beyond a reasonable doubt of the crime of sending a threatening communication. The particular question that we must answer, and have already answered earlier in this opinion, is whether the government made a submissible case on each of the four messages that are the basis of the four counts of conviction. Given the material differences between the letter at issue in *Barcley* and the correspondence at issue here, and given the material differences between the circumstances surrounding the letter sent by Barcley and the missives sent by Bellrichard, we find nothing in *Barcley* that is inconsistent with our conclusion that in the present case the government made a submissible case on each of the four counts of conviction.[8] Each of Bellrichard's communications, viewed in context, would permit a reasonable jury to find that the communication conveys "a determination or intent to injure presently or in the future." *Martin*, 691 F.2d at 1240.

■ Contrary to Bellrichard's contentions, we have adopted an objective standard for analyzing threats under 18·U.S.C. § 876 and we have stated, "If a reasonable recipient, familiar with the context of the communication, would interpret it as a threat, the issue

---

8. The *Barcley* letter, written by a disgruntled prisoner to his appointed appellate counsel, reads as follows:

Dear Mr. Vrooman: The dictation of this communication is necessitated by the fact that your correspondence was received this 17th day of September, A.D. 1969, and before too many lines are written, I will remind you of a small part of the conversation that was had at a time when you deemed it necessary to visit me, that you adventated the necessitation of being boss in this case, of which in rebuttal the statement was, that you could be the boss so long as you conformed to precise dictation of just what I wanted in the assignment of error. Now, I don't intend to set around for the four years with a finger in my ass and play the same game that some two bit lawyer thinks he can do, knowing that I am much more qualified than the 12 years that you have in criminal law, plus the three prior lawyers combined.

Now, again, I will attempt to tell you, that when the time came for the second visit, September 12, 1969, that there were additional assignment of error in which to be presented in court. Plus the fact that I wanted to attack the motion for arrest of judgment and motion for new trial, in and for itself.

You can, first, stick that stipulation entered into by you, the States Attorney, and the Attorney General, in your trash can. For you can't perfect an appeal without all the factual material being presented.

Number Two, you God damn well better withdraw the assignments of error until such time as you get all the assignments of error and factual material together.

Number Three, the record has not been settled. And you better listen to me and not at me you "S.O.B." because I am not playing your game.

In point of fact, as soon as I can get this case situated around in the position I want you are the first S.O.B. that will go, Sam Sechser will next.

The remaining two steps you are talking about are not substantiated by letting your ass overload your mouth. For you did not get my ok in sending this to the Supreme Court, which is to say that you better be on your Code of Ethics before you force me into an unsuitable position.

Signed, Respectfully Submitted,
Homer Barcley.

*Barcley*, 452 F.2d at 931–32.

should go to the jury." *Martin*, 691 F.2d at 1240. Sections 871 and 876 "recognize in their terminology that it is the making of the threat that is prohibited without regard to the maker's subjective intention to carry out the threat. The threat alone is disruptive of the recipient's sense of personal safety and well-being and is the true gravamen of the offense." *United States v. Manning*, 923 F.2d 83, 86 (8th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 2860, 115 L.Ed.2d 1027 (1991). In *Manning*, we upheld the conviction of the defendant for sending a letter to a judge stating, "you will die within the next six months;" we concluded that a reasonable jury could find this language to be a true threat when taken in context with an unequivocal threat in the same letter to kill President George Bush. *Id.* at 85. We cannot say that Bellrichard's correspondence, taken in context, is any less threatening than the letter in *Manning*.

For the reasons stated, Bellrichard's convictions are affirmed.