**UNITED STATES of America,**
**Plaintiff,**

v.

**John A. POLSON, Defendant.**

**No. CR–1–01–006.**

United States District Court,
S.D. Ohio,
Western Division.

May 8, 2001.

**ORDER**

SPIEGEL, Senior District Judge.

This matter is before the Court on Defendant's Motion and Supporting Memorandum to Dismiss the Indictment (doc. 25) and the Government's Response (doc. 27), to which Defendant did not file a Reply.

## BACKGROUND

### A. *Introduction*

On January 24, 2001, Defendant John A. Polson was charged in a single-count Indictment with "knowingly, deposit[ing] in an authorized depository for mail matter, to be sent and delivered by the [United States] Postal Service, a written communication, dated September 13, 2000, addressed to Stanley M. Chesley, 2930 Belkay Lane, Cincinnati, Ohio 45237, and containing a threat to injure the person of Stanley M. Chesley, that is, 'STAN, You can take comfort in the fact that we will not use a gun on you. You will wish we had! You can start pack'n a gun but it will do absolutely no good' ", in violation of Title 18 U.S.C. § 876 (docs.10, 27, Ex. A).

On April 12, 2001, Defendant Polson filed a Motion and Supporting Memorandum to Dismiss the Indictment in which Defendant moved this Court to dismiss the Indictment against him for two stated reasons (doc. 25). *See* Fed.R.Crim.P. 12(b). First, that the content of the September 13, 2000 letter is protected speech under the First Amendment (*Id.*). Second, that the content of the letter does not rise to the level of a "true threat" under the law (*Id.*). Shortly thereafter, the Government filed its Response (doc. 27), to which Defendant did not file a Reply.

The following facts are derived from the Parties' memoranda that are the subject of this Order (*see* docs. 25 & 27).

### B. *Factual History*

On or about September 13, 2000, the Defendant, John Alfred Polson, sent to the home of Cincinnati Attorney, Stanley M. Chesley, Esq., and his wife, United States District Court Judge for the Southern District of Ohio, Susan J. Dlott, an anonymous letter, via United States mail to the cou-

ple's suburban Cincinnati address.[1] The letter contained the following message typed in all capital letters:

STAN,

YOU CAN TAKE COMFORT IN THE FACT, THAT WE WILL NOT USE A GUN ON YOU. YOU WILL WISH WE HAD! YOU CAN START PACK'N A GUN BUT IT WILL DO ABSOLUTELY NO GOOD.

(doc. 27, Ex. A). The September 13, 2000 correspondence also contained a reproduced $50.00 bill (*Id.*). On September 5, 2000, two additional "anonymous and harassing letters" were sent to the Chesleys' home, but these additional letters were not part of the Indictment in question, so the Court will not refer to them in this Order (*see* doc. 27, Exs. B & C).

In the course of investigating the September 13, 2000 letter, the United States Secret Service recovered two latent fingerprints on the letter and positively matched them with fingerprints held in the Federal Bureau of Investigation's AFIS database, which identified John Alfred Polson as a match. Mr. Polson was initially contacted by the Federal Bureau of Investigation on or about December 18, 2000, and voluntarily gave them a statement in conjunction with the FBI's investigation of the September 13, 2000 letter that was allegedly written by him (doc. 25, Ex. 1).

On December 27, 2000, Mr. Polson voluntarily appeared at the Union Township, Ohio Police Department and was met by Tim Greenlaugh of the USSS and Edward P. Woods of the FBI. In the interview, Mr. Polson admitted preparing and mailing the September 13, 2000 letter that was sent to Mr. Chesley's and Judge Dlott's home. Mr. Polson stated that he was motivated to write to Mr. Chesley because of Mr. Chesley's involvement in the class action law-

suits against gun manufacturers, his efforts to "take our guns away," as well as Mr. Chesley's political involvement with President Clinton (docs. 25 & 27).

During the interview, Mr. Polson voluntarily allowed the federal agents to search his home and also allowed himself to be fingerprinted (doc. 25, Ex. B). Among other items found at Mr. Polson's home, the federal agents recovered a "Brother-brand" electric typewriter upon which Mr. Polson admitted typing the September 13, 2000 letter, doctored photographs of President Clinton, and a handwritten piece of paper containing the name, "Stanley M. Chesley," along with Mr. Chesley's work and home address (*Id.*).

The following procedural history is derived from the record before us.

### C. *Procedural History*

On December 29, 2000, a sealed Criminal Complaint was filed in the United States District Court for the Southern District of Ohio by the Government against Defendant John A. Polson for knowingly violating Title 18 U.S.C. § 876 (docs.1–3). Defendant was arrested on the same day outside of his Withamsville, Ohio home without incident (docs. 4, 5 & 25, Ex. C).

Counsel was appointed for Defendant on January 2, 2001, and the next day, the Magistrate Judge ordered Defendant to be held without bond, pending a temporary commitment to the Federal Medical Center for a mental health examination and report (docs.6–9). The Forensic Report was unremarkable and Defendant was found to be competent to stand trial due to the fact that he does not suffer from any mental illness which would affect his mental competency (doc. 25, Ex. D).

---

1. The Government notes in its Response that Defendant denied during his December 27, 2000 interview with federal agents knowing

that Mr. Chesley's wife was a United States District Court Judge (doc. 27).

On January 24, 2001, a Federal Grand Jury in the Southern District of Ohio indicted Defendant on one count of violating 18 U.S.C. § 876 (docs.10–12). Defendant was arraigned before the Magistrate Judge on March 15, 2001 (doc. 17), and this Court held a Final Pretrial Conference with the Parties on March 29, 2001 (docs. 18 & 20). During the Conference, a jury trial was set for May 22, 2001 (*Id.*).

In addition, the Court held a Bond Hearing in this matter on April 5, 2001 (doc. 23), at which time Defendant was released upon certain conditions as set forth in our April 11, 2001 Order (doc. 24). On April 12, 2001, Defendant filed a Motion to Dismiss the Indictment (doc. 25), followed by the Government's Response to that Motion (doc. 27). This matter is now ripe for our determination.

## DISCUSSION

### A. *Defendant's Motion to Dismiss*

In its Motion to Dismiss, Defendant puts forth two reasons as to why the Indictment is not supportable (doc. 25). First, Defendant asserts that he is a strong supporter of Second Amendment gun rights to citizens and was also opposed to the administration of former President Clinton. Specifically, Defendant contends that his political opposition to Mr. Chesley arises from Mr. Chesley's role as Lead Counsel to the City of Cincinnati in its suit seeking to hold gun manufacturers responsible for the "foreseeable damage" caused by its products, as well as Mr. Chesely's "well-publicized fund-raising efforts" on behalf of former President Clinton and Vice-President Gore (doc. 25).

As such, Defendant argues that his comments, as stated in the September 13, 2000 letter, are deserving of First Amendment protection as political speech. *See Watts v. United States*, 394 U.S. 705, 708, 89 S.Ct. 1399, 22 L.Ed.2d 664 (1969) (finding that the statute in question in that case must be interpreted "against the background of a profound national commitment to the principle that debates on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometime unpleasantly sharp attacks on government and public officials") (citing to *New York Times Co. v. Sullivan*, 376 U.S. 254, 270, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964); *United States v. Baker*, 890 F.Supp. 1375, 1378 (E.D.Mich.1995)) ("It is not the policy of the law to punish those unsuccessful threats which it is not presumed would terrify ordinary persons excessively; and there is so much opportunity for magnifying or misunderstanding undefined menaces that probably as much mischief would be caused by letting them be prosecuted as by refraining from it.") (citing to *The People v. B.F. Jones*, 62 Mich. 304, 28 N.E. 839 (1886)).

Defendant concludes his first point by contending that the words contained in the September 13, 2000 letter are nothing more than political speech, "albeit offensive and crude," but political in nature, and, therefore, protected speech under the First Amendment (doc. 25).

The second reason Defendant gives as to why the Indictment should be dismissed is because the letter in question does not contain a true threat, and is, therefore, not actionable under 18 U.S.C. § 876. Defendant asserts that this is the case because a prosecution under Title 18 U.S.C. § 876, requires the Government to prove three elements: (1) a transmission in interstate commerce; (2) a communication containing a threat; and (3) the threat must be to injure the person of another (doc. 25). *See United States v. Alkhabaz*, 104 F.3d 1492, 1495 (6th Cir.1997); *see also Baker*, 890 F.Supp. at 1378.

Specifically, Defendant argues that the language in the September 13, 2000 letter

for which he was indicted, fails to satisfy both the second and third elements of the statute as a matter of law. *See United States v. DeAndino*, 958 F.2d 146, 148 (6th Cir.1992) (holding that the "general intent" of a defendant must be proved by "objectively looking at the defendant's behavior in the totality of the circumstances," rather than by "probing the defendant's subjective state of mind").

Defendant argues that there was no unequivocal threat in the letter, nor was there any expression of immediate intent to injure Mr. Chesely or his family. Defendant contends that the complete record before this Court reflects the fact that the Government is well aware of the fact that there was a strong political and non-threatening element to the comments made in the letter, and, therefore, the Indictment should not have been sought by the Government.

### B. *The Court's Holding*

■■■ Defendant Polson was indicted for violating 18 U.S.C. § 876, which reads, in pertinent part:

> Whoever knowingly so deposits or causes to be delivered as aforesaid, any communication with or without a name to designating mark subscribed thereto, addressed to any other person containing any threat to kidnap any person or any threat to injure the person of the addressee or of another, shall be fined under this title or imprisoned not more than five years, or both.

*Id.* (West 2000). The factors taken into account in determining if a statement constitutes a "true threat" include: (1) the context of the statement; (2) whether the statement has a political dimension; (3) whether the statement was conditional; and (4) the reaction of the listener. *See Watts*, 394 U.S. at 707, 89 S.Ct. 1399; *United States v. Miller*, 115 F.3d 361, 364 (6th Cir.1997) (holding that a "true threat"

is determined by whether a "reasonable person would foresee that an objectively rational recipient of the statement would interpret its language to constitute a serious expression of intent to harm"); *see also Baker*, 890 F.Supp. at 1381.

Having reviewed this matter, the Court finds Defendant's arguments in favor of dismissing the single count Indictment to be unpersuasive for several reasons.

First, Defendant does not deny the fact that he sent an anonymous letter to the private home of Mr. Chesely, a Cincinnati attorney, and his wife, Judge Dlott, with the following message typed in all capital letters:

> STAN,
> YOU CAN TAKE COMFORT IN THE FACT THAT WE WILL NOT USE A GUN ON YOU. YOU WILL WISH WE HAD! YOU CAN START PACK'N A GUN BUT IT WILL DO ABSOLUTELY NO GOOD.

(doc. 27, Ex. A). The direct or indirect interpretation of this language is that the writer, along with others, may torture, maim, or kill Mr. Chesely in an excruciating manner. This possible "threat" is not necessarily limited to Mr. Chesely, since it was mailed directly to his private home and not to his public offices. *See Planned Parenthood of the Columbia/Willamette, Inc. v. American Coalition of Life Activists*, 244 F.3d 1007, 1018–19 (9th Cir.2001) ("In targeting the recipient personally, the speaker leaves no doubt that he is sending the recipient a message of some sort. In contrast, typical political statements made at rallies or through the media are far more diffuse in their focus because they are generally intended, at least in part, to shore up political support for the speaker's position.") *United States v. Bellrichard*, 994 F.2d 1318, 1321 (8th Cir.1993) ("As a general proposition, correspondence . . . delivered to a person at home or at work is

somewhat more likely to be taken by the recipient as a threat than is an oral statement made at a public gathering, which was the situation in *Watts.*").

In its Response (doc. 27), the Government asserts that, both Mr. Chesley and Judge Dlott believed that the writer of the September 13, 2000 letter would harm or kill them both and/or Mr. Chesley's children and grandchildren. Furthermore, the Chesley family also expressed a sense of heightened anxiety for their family as a whole as a direct result of receiving the anonymous letter (*Id.*).

▇ Second, the Court also finds that a reasonable jury, viewing the evidence objectively and as a whole, could conclude that the letter in question did constitute a credible and threatening communication that was sent through the mails, in violation of 18 U.S.C. § 876. In general, whether a communication constitutes a "threat" within the purview of 18 U.S.C. § 876 is a question of fact for the jury so long as a reasonable recipient, familiar with the context of the communication, could interpret it as a threat. *See United States v. Daughenbaugh*, 49 F.3d 171, 174 (5th Cir.1995); *United States v. Malik*, 16 F.3d 45, 49 (2d Cir.1994) ("Whether a given writing constitutes a threat is an issue of fact for the jury."); *Bellrichard*, 994 F.2d at 1323–24; *United States v. Taylor*, 972 F.2d 1247, 1251 (11th Cir.1992); *United States v. Lincoln*, 589 F.2d 379, 381–82 (8th Cir.1979). This would take such a "threatening" communication outside of the province of protected, political speech as represented by the First Amendment. *See Watts*, 394 U.S. at 708, 89 S.Ct. 1399 (finding that the defendant's expressly conditional speech made publicly in the context of a political rally was protected speech under the First Amendment).

Third, the facts of this case, as alleged in the Indictment (doc. 10) and the Government's Motion (doc. 27), fall well within the wide spectrum of prosecutable threat cases, and, therefore, should be submitted to the jury for them to determine whether the message in the September 13, 2000 letter constitutes a "true threat." *Miller*, 115 F.3d at 364 ("The lower court correctly rejected [defendant's] motions for acquittal and properly submitted the 'true threat' issue to the jury."); *United States v. Carrier*, 672 F.2d 300, 306 (2d Cir.1982) (finding that "[m]ost cases are within a broad expanse of varying fact patterns which may not be resolved as a matter of law, but should be left to a jury").

▇ In his Motion, Defendant appears to suggest that the mere fact that he decided to target Mr. Chesley because he was angered by Mr. Chesley's representation of the City of Cincinnati in its suit against the gun manufacturers and Mr. Chesley's association with President Clinton automatically transforms the threatening message into protected speech. Defendant's political motives for targeting Mr. Chesley does not convert the contents of the letter or its intended threat into constitutionally protected speech.

Several courts have held that a threatening communication melded with some form of political expression, especially in the context of threatening communications involving world leaders which inherently involve some political motive or message, does not constitute protected speech simply because there is a political idea attached. *See United States v. Kelner*, 534 F.2d 1020, 1028 (2d Cir.1976) (finding that the defendant could be prosecuted for threatening Yasser Arafat because the defendant's public statements did not only constitute political expression or ideas, but also consisted of direct threats on the life of Chairman Arafat); *Bellrichard*, 994 F.2d at 1322 (finding that "a person may not escape prosecution for uttering threatening language merely by combining the

threatening language with issues of public concern").

In the case at bar, Defendant's September 13, 2000 letter never mentioned his political views on the class action gun lawsuits, his views on President Clinton, or any other issues that can be construed as a politically, protected speech. A reasonable juror could conclude that the reasonable recipient of such a letter would not interpret the comments made as one of a political nature, but rather as a "true threat" of violence by means of a firearm against him personally, and/or his immediate family.

In conclusion, the Court finds that the September 13, 2000 letter sent to the Chesley home could be viewed objectively by a reasonable juror as menacing enough in reference to the use of a "gun" in order to cause a reasonable recipient, and not just the Chesley family, to conclude that it is an expression of a serious intent to do the family harm by means of a gun.

In addition, the Court finds that Defendant's letter to Mr. Chesley cannot be construed as protected speech under the First Amendment as a matter of law, because a reasonable jury could find that Defendant directly or indirectly threatened Mr. Chesley with the use of force or violence, which threats are not protected by the First Amendment. *See R.A.V. v. St. Paul,* 505 U.S. 377, 388, 112 S.Ct. 2538, 120 L.Ed.2d 305 (1992) (noting that "threats of violence are outside the First Amendment"); *United States v. Orozco–Santillan,* 903 F.2d 1262, 1265–66 (9th Cir.1990) ("A true threat is unsupported by the First Amendment.").

Consequently, because a reasonable juror could find Defendant liable for mailing a threatening communication in violation of 18 U.S.C. § 876, the Indictment as alleged is valid and will not be dismissed (*see* doc. 10).

## CONCLUSION

For the reasons set forth above, Defendant's Motion to Dismiss the Indictment is hereby DENIED (doc. 25). Trial in this matter is SET for Tuesday, May 22, 2001 (doc. 20).

SO ORDERED.