845 So.2d 1022 (2003)
Ahmad SAIDI, Appellant,
v.
STATE of Florida, Appellee.
No. 5D02-2029.
District Court of Appeal of Florida, Fifth District.
May 30, 2003.
*1024 James B. Gibson, Public Defender, and Noel A. Pelella, Assistant Public Defender, Daytona Beach, for Appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Mary G. Jolley, Assistant Attorney General, Daytona Beach, for Appellee.
ORFINGER, J.
Ahmad Saidi appeals his conviction of sending written threats of death or bodily injury in violation of section 836.10, Florida Statutes (2001). The charge arose after Saidi sent various letters and papers to William Roy, the attorney representing Saidi's former wife in a contentious post-judgment family law proceeding, and to the Circuit Court of Seminole County, Florida. While conceding that he authored and sent the letters and papers, Saidi argues that section 836.10 is unconstitutional as it is vague, overbroad, and infringes on his First Amendment rights. He also claims that the trial court erred in its instructions to the jury and by improperly prohibiting him from filing any pro se pleadings or papers in the future, as a condition of his probation. We affirm.
In 1998, attorney William Roy began representing Saidi's former wife in the Saidis' post-judgment dissolution dispute. Saidi proceeded pro se after at least five, and perhaps as many as ten attorneys, had withdrawn as his counsel. Saidi filed numerous pro se motions, bankruptcies and appeals during the course of the litigation. According to Roy, Saidi was very angry with him and the legal system, and referred to the courthouse as "the house of Satan," and Roy as "the devil." Saidi apparently became convinced that his former wife, Roy and the judges of Seminole County were conspiring against him. As the case progressed, Saidi's frustration or anger with the legal system escalated, and increased security was required whenever Saidi appeared at the courthouse. Restraining orders were issued against Saidi for the protection of Roy, his wife, and Saidi's former wife. Shortly after a confrontation with Roy in May, 2001, at the Seminole County Courthouse, Saidi filed with the court, and faxed to Roy, a document entitled "Notice of Filing Warning and Threats to Kill and Motion Requesting Scheduling of an Urgent Hearing." That document included the following language:
3-SAIDI ... is giving this notice threatening to kill both of the Former Wife and her Counsel. In order for him to execute this killing[,] he is using his ONLY weapon that he has of his own and the weapon supplied to him by the contents of the pleadings that are filed by the Former Wife and ROY.
4-SAIDI is calling upon the Honorable Judge Debra Nelson to allow the parties using her Courtroom as battle ground for the fight to execute the killing. Judge Nelson however has ordered SAIDI not to file any more motions in this case before she hears anything from the Appellate Court. Therefore, SAIDI, respectfully, moves the Honorable Judge Nelson to allow another Judge to preside over this legal and yet lethal fight.
5-SAIDI is, further, appealing to Judge Nelson to allow scheduling an urgent hearing for three (3) hours for an evidentiary hearing to test the first weapon that SAIDI is using and hear his MOTION TO REOPEN THE HEARING, dated April 27, 2001[,] as stated above....

*1025 6-SAIDI calls upon Judge Nelson, this Court and the legal system to respond to the call of the duty and implement the legal system's rules, procedure and proper powers to secure justice and protect the interest of all parties, the Former Wife, the Former Husband, their children, all citizens of the state and safe guard [sic] the legal system. This Court has the obligations and has the jurisdiction and the power to halt ROY'S unethical and criminal actions. SAIDI and the society can not [sic] afford for ROY to continue to be a loose cannon equipped with the pretence [sic] that he is an officer of the court and he does what ever [sic] he please[s]. USING THE WEAPON OF THE TRUTH WILL SET EVERY ONE FREE. PLEASE LET U.S. PROVIDE A FREE FORUOM [SIC] FOR THE TRUTH TO SURFACE.
(emphasis in original).
About the same time, Saidi sent Roy a letter that said:
Mr. Roy: You have succeeded in the past in prosecuting your unprofounded motion to show cause which led, temporary [sic], to strike my pre-judgment pleadings, because you were in a dark arena alone and Judge Nelson was ready, willing and able to stamp your proposed self-serving orders to execute a conspiracy plan that was spoon fed to her by Judge Eaton and you were the mover behind this action. At this time, things have changed, the arena is very well-lighted, Judge Eaton is gone and he will be prosecuted, Judge Nelson will be next and now you are in the frying pan.
As the most cheap shot, and the last attempt of desperation for your dying future as a counsel, you and you[r] client have brought my children into the ring. Your client knows how I tried so hard to keep the children out of this saga. You know what? I think you both have done me a favor and brought the weapon that will kill both of you. This time, I am still equipped with the truth and in order of reminding you of my deep conviction of the same; I am, enclosing with this letter the third page of my letter to you on February 23, 2001 to make you more familiar with my weapon. Please you and you[r] client, stay away from children and their LAKE SHEPHERD asset as your own. Back off? Otherwise you will be kicked in your behinds in your attempts to deprive my children of their secured future to live the American way that is provided to them by an Easterner, a Palestinian who cherishes his children as the most precious thing in life. Please consult the literature to know about this fact.
Mr. Roy: ... This is a racketeering income by a foxy and unethical individual. It is a curse for him to be called, an attorney, a counsel and I was fool when addressed him as a judge.
Since the case is [sic] no longer deal with divorce and did not consider the merits of the issues and its fought solely on deception, perjury, misrepresentation of the facts, changing the official and public records by a bias and misled Judge, over maneuvered by a crook advocate, I will gather all of the forces of good around me to stand beside me to fight the evil in you and your innocent client, I do mean she was the most innocent, decent, and just good person that I knew! Unfortunately[,] she has changed. You both do not forget that the most lethal weapon of them all is the TRTUTH [sic].
Roy testified that receiving these papers, in light of his prior difficult relationship with Saidi, caused him great alarm.
At trial, Saidi testified that although he had lived in the United States for thirty-nine years, English was not his native language and that in Palestine, his native *1026 land, the word "kill" was synonymous with "defeat." He testified that he never intended to harm Roy or his former wife, and only intended to "defeat" the trial court's order distributing the Saidis' marital assets. The jury found Saidi guilty as charged, and he was placed on probation, a special condition of which prohibited him from pro se representation in any civil or family law action.
While Saidi acknowledges that the Second District Court of Appeal concluded in Smith v. State, 532 So.2d 50 (Fla. 2d DCA 1988), that section 836.10, Florida Statutes, is constitutional, he argues that the court failed to consider that the statute lacks a specific intent element. Saidi contends that because the statute does not require the specific intent to cause harm, innocent written speech can be criminalized. He also argues that the State should have been required to prove that he had the ability to carry out the threat.
At the outset, we note our agreement with Smith, and conclude that section 836.10 is not vague. We also disagree with Saidi's contention that section 836.10 is constitutionally infirm because it is overbroad. Section 836.10 prohibits sending a written communication threatening to kill or injure the recipient, or any member of his/her family. Smith. Threats to kill or do bodily harm are not constitutionally protected and are legislatively proscribable. United States v. Hutson, 843 F.2d 1232 (9th Cir.1988); United States v. Quinn, 514 F.2d 1250, 1268 (5th Cir.1975). Because threats to injure or kill are not constitutionally protected, Saidi's First Amendment rights are not compromised by laws prohibiting such threats. See Reilly v. State, Dep't of Corrs., 847 F.Supp. 951, 958 (M.D.Fla.1994); see also State v. Brown, 50 Wash.App. 405, 748 P.2d 276 (1988) (threat to cause bodily injury or physical damage to the property of another is not protected speech); see also United States v. Viefhaus, 168 F.3d 392, 396 (10th Cir.1999) ("The fact that a specific threat accompanies pure political speech does not shield a defendant from culpability."); United States v. Bellrichard, 994 F.2d 1318, 1322 (8th Cir.1993) ("[A] person may not escape prosecution for uttering threatening language merely by combining the threatening language with issues of public concern.").[1]
*1027 Next, Saidi asserts that the trial court gave jury instructions that were confusing and misleading. Specifically, Saidi argues that the jury was misled as to the State's burden of proof because the trial court refused to instruct the jury that it must find the specific intent to cause harm as a necessary element of the charged offense.
While conceding that the issue was not raised at trial, Saidi argues that a jury instruction that is confusing or misleading regarding an element of the crime charged is reviewable as fundamental error. See Hubbard v. State, 751 So.2d 771, 772 (Fla. 5th DCA 2000) (holding that the issuance of "`an incomplete and inaccurate instruction on the law is fundamental error where the error relates to the elements of the criminal offense'") (quoting Ward v. State, 655 So.2d 1290, 1292 (Fla. 5th DCA 1995)); see also Johnson v. State, 632 So.2d 1062 (Fla. 5th DCA 1994). While we agree with that general statement of the law, it has no application here.
Section 836.10, Florida Statutes is violated if: (1) a person writes or composes a threat to kill or do bodily injury; (2) the person sends or procures the sending of that communication to another person; and (3) the threat is to the recipient of the communication or a member of his family. State v. Wise, 664 So.2d 1028, 1030 (Fla. 2d DCA 1995); Smith. Similar to extortion, this crime does not require the actual intent to do harm or the ability to carry out the threat. See § 836.10, Fla. Stat.; Dudley v. State, 634 So.2d 1093, 1094 (Fla. 2d DCA 1994); Alonso v. State, 447 So.2d 1029, 1030 (Fla. 4th DCA 1984).[2] Consequently, we conclude the trial court properly instructed the jury as to the elements of the charged crime.
Finally, Saidi submits that the trial court erred by prohibiting him from filing any pro se pleadings in any civil or family litigation as a condition of probation. Saidi argues that this condition deprives him of access to the courts and the right to petition the courts for a writ of habeas corpus. The State responds by arguing that any error regarding the special condition has been waived as Saidi did not object below or file a motion to correct sentence, and that the error is not fundamental. Further, the State contends that the special condition was properly imposed given the evidence presented at trial and at sentencing.
As a general rule, there must be a reasonable nexus between any special condition of probation and the crime committed by the offender. Biller v. State, 618 So.2d 734 (Fla.1993). When a question is raised concerning the relevancy of a special condition or probation, the record must support the imposition of the condition. McCarthren v. State, 635 So.2d 1005, 1006 (Fla. 5th DCA 1994). In the absence *1028 of a contemporaneous objection, a defendant may appeal a condition of probation only if it is so egregious as to be the equivalent of fundamental error. Larson v. State, 572 So.2d 1368, 1371 (Fla.1991). Here, we conclude that the prohibition against pro se filings as a special condition of probation does not constitute error, fundamental or otherwise.
Probation is a matter of grace and is subject to exercise of the trial court's discretion. McCarthren, 635 So.2d at 1006; Bentley v. State, 411 So.2d 1361 (Fla. 5th DCA 1982) (en banc). "[E]ven constitutional rights can be abridged by conditions of probation if the conditions `are reasonably related to the probationer's past or future criminality or to the rehabilitative purposes of probation.'" Lindsay v. State, 606 So.2d 652, 657 (Fla. 4th DCA 1992) (quoting Wiggins v. State, 386 So.2d 46, 47 (Fla. 4th DCA 1980)). The fact that a condition of probation burdens constitutional rights is not alone a basis to set it aside. Id.
In Larson, the Florida Supreme Court explained that:
As a general rule, a condition of probation that burdens the exercise of a legal or constitutional right should be given special scrutiny. However, a defendant cannot successfully challenge every aspect of a prior order of probation simply because it infringes on some such rights. Most sentences and orders of probation have that effect, if only because they restrict liberty to some extent.
572 So.2d at 1371.
Admittedly, the condition of probation banning pro se filings burdens Saidi's constitutional right to access to the courts. See Art. I, § 21, Fla. Const. However, given the facts in this case, the record supports the imposition of this condition of probation considering Saidi's crime and past conduct. The condition of probation does not, however, infringe upon Saidi's right to petition for habeas corpus relief or from seeking postconviction relief. The pro se filing prohibition is confined to civil and family matters. A petition for a writ of habeas corpus, while technically civil, is generally used to challenge the legality of confinement pursuant to a criminal judgment and sentence, and such a writ would not be precluded by this condition. See State ex rel. Butterworth v. Kenny, 714 So.2d 404, 409-10 (Fla.1998) (recognizing that habeas corpus proceedings, while technically classified as civil actions, are actually quasi-criminal in nature).
AFFIRMED.
SHARP, W. and PETERSON, JJ., concur.
NOTES
[1] Other courts have found similar statutes constitutional. See, e.g., United States v. Polson, 154 F.Supp.2d 1230 (S.D.Ohio 2001) (holding that threatening communications fall outside the province of protected political speech as represented by First Amendment; reasonable jury could conclude that the reasonable recipient of threatening letter would not interpret it as being of a political nature, but rather as a true threat of violence, letter was not protected speech under First Amendment and could be basis for prosecution under statute proscribing mailing threatening communications; letter never mentioned sender's political views but did make direct or indirect threats of use of force or violence); Yates v. Commonwealth, 753 S.W.2d 874 (Ky. App.Ct.1988) (statute prohibiting communications made with intent to harass, annoy, or alarm by telephone, or any form of written communication, which cause annoyance or alarm and served no purpose of legitimate communication, was not unconstitutionally vague or overbroad; statute did not infringe right to free speech, but rather, protected individual's right to be left alone, and provided reasonable opportunity to know what actions were prohibited); State v. Ross, 269 Mont. 347, 889 P.2d 161 (1995) (intimidation statute not facially overbroad on First Amendment free speech grounds as speech threatening to "inflict physical harm" is rarely, if ever, protected); but see State v. Lee, 82 Wash. App. 298, 917 P.2d 159 (1996) (claim that stalking statute potentially infringed on range of traditional First Amendment activities, such as political protesting or news gathering did not render statute unconstitutionally overbroad, as statute required that person followed experience fear or intimidation, and, therefore, statute's effect on First Amendment activities was not substantial); People v. Deem, 30 Cal.App.3d Supp. 1, 106 Cal.Rptr. 311 (1972) (statute making it unlawful to knowingly and willfully send or deliver to another any letter or writing threatening to accuse one of a crime or to expose or publish any of his failings or infirmities but not requiring that the threat be wrongful or unjustified or that there be bad faith or intent to injure violated constitutional guarantee of right to free speech and was invalid).
[2] This analysis is consistent with decisions of other courts reviewing similar statutes. See, e.g., Illinois v. Peterson, 306 Ill.App.3d 1091, 240 Ill.Dec. 164, 715 N.E.2d 1221 (1999) (although intimidation is a special intent crime, intent to harm another is to element thereof: intent that must be proved is not intent to carry out threat, but intent to cause another to perform or omit performance of any act); Ross (in order for there to be "true threat" within meaning of intimidation statute, it is not necessary that defendant intend to carry out threat, but, rather, it is only necessary that threat have been made for purpose to cause another to perform or omit performance of act; what matter is only that threat is communicated in way that victim reasonably fears that threat will be carried out).