532 So.2d 50 (1988)
Thomas J. SMITH, Appellant/Cross-Appellee,
v.
STATE of Florida, Appellee/Cross-Appellant.
No. 87-2885.
District Court of Appeal of Florida, Second District.
October 5, 1988.
*51 Thomas J. Smith, pro se.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Carol M. Dittmar, Asst. Atty. Gen., Tampa, for appellee/cross appellant.
FRANK, Judge.
Thomas Smith appeals from his conviction and sentence for twelve counts of sending threatening letters and four counts of threatening harm to a public servant, or a person with whose welfare the public *52 servant is interested.[1] The state has cross-appealed contending that the trial court's decision to depart downward from the recommended guidelines sentence was based on insufficient evidence. We affirm the trial court in all respects.
Believing himself the victim of a conspiracy composed of attorneys and the judiciary, Smith mailed numerous letters to the wives of Pinellas County judges and attorneys. One was sent to the home of a circuit judge who had presided over an unsuccessful civil action initiated by Smith. The letter, purporting to originate in the office of the governor, began by praising the judge for "civic volunteerism" and "exemplary honorable character," but stated that the paper upon which it was printed was treated with a "rare, lethal toxin for which there is no antidote." In this instance the judge's wife testified that while she was "surprised" by the content of the letter, she did not believe the paper would poison her. Other recipients, however, expressed a greater degree of concern. Smith never denied sending the letters, but instead described them as "a colossal hoax to draw attention to the corruption in the Sixth Judicial Circuit." Despite his disavowal of any intent to cause harm, and his apparent belief that an underlying tone of humor was recognizable from the face of the letters, Smith was convicted as charged.[2]
We cannot discern with precision whether Smith's pro se brief attacks the trial court's refusal to permit self-representation in the conduct of his trial or the effectiveness of his appointed counsel. In any event, we have reviewed the record in its entirety and find no error in the events associated with the trial of this matter.
Smith's major claims of error are that the statutes under which he was convicted are unconstitutionally vague, the evidence was insufficient to warrant a conviction and that the criminal proceeding infringed upon his First Amendment right to protest perceived inequities in the legal system. We find no merit in such claims. If the language of a criminal statute conveys sufficiently definite warnings of the proscribed conduct, it is not unconstitutionally vague. State v. Wilson, 464 So.2d 667 (Fla. 2d DCA 1985). We find the statutes offended by Smith's behavior free from constitutional defect; the proscriptions they communicate are not difficult to divine. Section 836.10 makes it a felony to send or procure the sending of any document threatening to kill or injure the recipient or a family member. Section 838.021(3)(b) condemns threats of harm to public servants or persons with whose welfare such servants are entrusted. Section 836.10 is justified by the right of all persons to live free of unexpected and unwarranted fear of harm; and section 838.021(3)(b) is designed to protect public officials in the discharge of their duties without unlawful intimidation.
We find the state's evidence sufficient to sustain Smith's convictions. The record discloses no dispute that the letters were incapable of directly causing physical injury. Moreover, the letters' wording, at least when viewed in the cold light of objective assessment, might even contain a measure of twisted wit. Smith insists that he intended no harm apart from the inevitable shock of his "hoax," and there is no evidence that he contemplated any injury to the persons receiving his letters. With any offense, however, involving or resembling extortion, and Smith's actions may be so characterized, neither the actual intent to do harm nor the ability to carry out the threats is an essential element. Alonso v. State, 447 So.2d 1029 (Fla. 4th DCA 1984); Reid v. State, 405 So.2d 500 (Fla. 2d DCA 1981). For example, in United States v. Callahan, 702 F.2d 964 (11th Cir.), cert. denied, 464 U.S. 840, 104 S.Ct. 133, 78 L.Ed.2d 128 (1983), the accused wrote the director of the Secret Service, announcing the necessity of assassinating President Reagan and Vice-President Bush on Inauguration *53 Day. When charged with the federal offense of sending a letter containing threats against the President, Callahan maintained that his was a "conditional statement" containing only "political hyperbole," and the fact that the Secret Service did not immediately respond was indicative that the letter was not perceived as a serious threat.[3] The court nevertheless upheld Callahan's conviction, stating that the question is whether threatening language reasonably may be construed to evince a serious expression of an intent to do harm. See also, Martin v. United States, 691 F.2d 1235 (8th Cir.1982), cert. denied, 459 U.S. 1211, 103 S.Ct. 1207, 75 L.Ed.2d 447 (1983); United States v. Maisonet, 484 F.2d 1356 (4th Cir.1973), cert. denied, 415 U.S. 933, 94 S.Ct. 1447, 39 L.Ed.2d 491 (1974). In the present case the victims' reactions to Smith's letters appear to have ranged from mild concern to near panic. The jury obviously believed his threats of imminent poisoning were sufficient to cause alarm in reasonable persons. It is a hallowed principle that a jury's verdict when supported by the evidence is not to be overturned, even when a trial judge may form a different view of the evidence; we, too, are foreclosed from disturbing the jury's determination.
Smith's belief that his freedom of expression outweighs whatever likelihood may exist that his choice of language might tend to frighten some persons is wholly meritless: "Resort to ... personal abuse is not in any proper sense communication of information or opinion safeguarded by the Constitution, and its punishment as a criminal act would raise no question under that instrument." Cantwell v. Connecticut, 310 U.S. 296, 309-310, 60 S.Ct. 900, 905-06, 84 L.Ed. 1213 (1939). It is true that language of dissatisfaction is "often vituperative, abusive, and inexact," Watts v. United States, 394 U.S. 705, 708, 89 S.Ct. 1399, 1402, 22 L.Ed.2d 664 (1969), but courts must exercise caution in distinguishing true threats from crude hyperbole  a judgment derived from examining the totality of the circumstances. Watts arose in the setting of an anti-war rally at which the defendant expressed a desire to shoot the President, under circumstances where the utterance could only be interpreted as satirical. In Matthews v. State, 363 So.2d 1066 (Fla. 1978), which the court found distinguishable from Watts, the setting was a protest gathering at which fear of imminent harm to public officials was "consciously embraced." In a society where the expression of opinion is given the fullest protection, public figures must expect criticism that may be untrue, unjustified, or hurtful. They need not, however, passively accept statements or conduct transcending mere criticism which threaten personal or family safety. Smith, with his "poisoned" pen, crossed that threshold and he may not now claim constitutional insulation for his actions.
Smith's remaining points on appeal, all of which we have considered, are equally without merit and require no discussion.
Finally, the state's view that the trial court erred in imposing a sentence less than that recommended under the sentencing guidelines warrants comment but not deviation from its determination. The court found that Smith's acts were motivated by "an extreme emotional condition." The state suggests that his conduct was carefully devised with full awareness of the possible consequences and that his mental status displays at best a level of "antisocial behavior ... inherently to blame for the commission of every criminal offense." We find ample evidence in the record to support the trial court's finding that Smith's emotional or intellectual state, while not permitting a finding of incompetence or insanity, disclosed psychological problems justifying mitigation. Cf. State v. Twelves, 463 So.2d 493 (Fla. 2d DCA 1985). We do not, of course, in any way view Smith's assault upon the integrity of the judicial system as excusable. If conduct such as that engaged in by Smith were permitted to go unpunished, the inevitable result would be the very "anarchy" that Smith cries out against in railing *54 against the legal profession. However, Smith's punishment is not to be gauged by the offensiveness of his words but rather by such matters as his dangerousness, the likelihood of recidivism, the actual harm done, and the possibility that his behavior was influenced by factors not entirely within his control. We are persuaded that the trial court fairly considered the relevant criteria and that the decision to depart downward from the guidelines is supported by the record. Tanner v. State, 468 So.2d 505 (Fla. 2d DCA 1985).
AFFIRMED.
RYDER, A.C.J., and DANAHY, J., concur.
NOTES
[1] Respectively, § 836.10, Fla. Stat. (1987) and § 838.021(3)(b), Fla. Stat. (1987).
[2] For example, some of the letters were signed "Oscar Wilde," a reference to the playwright's satirical aversion to lawyers.
[3] 18 U.S.C.A. § 871.