# Third District Court of Appeal

## State of Florida

Opinion filed January 20, 2021.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D20-0032
Lower Tribunal No. 18-109
_____

**Alex Romero,**
Petitioner,

vs.

**The State of Florida,**
Respondent.

_____

No. 3D20-0033
Lower Tribunal No. 18-24
_____

**Richard Gugula,**
Petitioner,

vs.

**The State of Florida,**
Respondent.

_____

No. 3D20-0034
Lower Tribunal No. 18-197
_____


**Jerome London,**
Petitioner,

vs.

**The State of Florida,**
Respondent.


_____

No. 3D20-0035
Lower Tribunal No. 18-22
_____


**Ventura Gomez,**
Petitioner,

vs.

**The State of Florida,**
Respondent.


_____

No. 3D20-0036
Lower Tribunal No. 18-34
_____

**Reginald Brown,**
Petitioner,

vs.

**The State of Florida,**
Respondent.


Petitions for Writ of Certiorari from the Circuit Court for Miami-Dade County, Appellate Division, Renatha Francis, Yery Marrero, and Dava J. Tunis, Judges.

Carlos J. Martinez, Public Defender, and John Eddy Morrison, Assistant Public Defender, for petitioners.

Ashley Moody, Attorney General, and Richard L. Polin, Assistant Attorney General, for respondent.


Before SCALES, HENDON, and MILLER, JJ.

MILLER, J.

In these consolidated cases, petitioners seek second-tier certiorari review of appellate decisions by the circuit court affirming their respective convictions and sentences imposed by the county court for violations of section 836.12(2), Florida Statutes (2019). Relying heavily upon the seminal Supreme Court decision in Virginia v. Black, 538 U.S. 343, 123 S. Ct. 1536, 155 L. Ed. 2d 535 (2003), petitioners raise a facial constitutional challenge to the statute for overbreadth under the First Amendment. We conclude the statute is amenable to a construction under which it does not reach a

3

substantial amount of constitutionally protected speech in furthering the State's valid, even "overwhelming, interest in protecting the safety of its" officers and "in allowing [them] to perform [their] duties without interference from threats of physical violence."[1]  Watts v. United States, 394 U.S. 705, 707, 89 S. Ct. 1399, 1401, 22 L. Ed. 2d 664 (1969).  Thus, we find no departure from the essential requirements of law and deny the writs.

## BACKGROUND

After uttering certain menacing statements, each petitioner was charged by information with one count of threatening a law enforcement officer.[2]  Petitioners argued in the trial court that section 836.12, Florida Statutes (2019), is unconstitutionally overbroad, contending the legislature's

---

[1] "[A] law should not be invalidated for overbreadth unless it reaches a substantial number of impermissible applications."  New York v. Ferber, 458 U.S. 747, 771, 102 S. Ct. 3348, 3362, 73 L. Ed. 2d 1113 (1982).

[2] Alex Romero, riding as a passenger in an unidentified vehicle, rolled down his window as an officer was picking up her daughter from daycare and stated, "Officer . . . I got you now," while making a gun gesture.  Richard Gugula made statements regarding bullet proof vests, shotguns, and seeing police officers soon.  Additionally, after getting arrested, he stated he would cause others to call police and would be waiting for them.  Jerome London, while in custody, made a statement about getting a hitman to kill a sergeant if taken to jail.  Ventura Gomez, while at a holding facility, commented that once he was released, he would get a gun, hunt for the arresting officers and shoot them like dogs.  He further said the City of Miami Beach would know him as a cop killer.  Reginald Brown, during the course of an arrest, stated he would kill both arresting officers and their families as soon as he was released.

4

failure to specify any requirement of scienter runs afoul of the First Amendment. In some cases, the judge specifically found any overbreadth issue could be resolved by way of a jury instruction. Regardless, in all cases, the county court upheld the constitutionality of the statute. Ensuing appeals to the circuit court appellate division proved unfruitful, and the instant petitions followed.

## STANDARD OF REVIEW

On second-tier certiorari, our "'inquiry is limited to whether the circuit court afforded procedural due process and whether the circuit court applied the correct law,' or, as otherwise stated, departed from the essential requirements of law." Custer Med. Ctr. v. United Auto. Ins. Co., 62 So. 3d 1086, 1092 (Fla. 2010) (citation omitted). "A ruling constitutes a departure from the essential requirements of law when it amounts to 'a violation of a clearly established principle of law resulting in a miscarriage of justice.'" Miami-Dade Cnty. v. Omnipoint Holdings, Inc., 863 So. 2d 195, 199 (Fla. 2003) (citation omitted).

## ANALYSIS

As due process was clearly afforded below, we focus our review on whether, in upholding section 836.12, Florida Statutes, the circuit court departed from clearly established constitutional law. Our analysis is guided

5

by the axiom that courts are charged with the "duty[,] if reasonably possible, and consistent with constitutional rights, to resolve doubts as to the validity of a statute in favor of its constitutional validity and to construe a statute, if reasonably possible, in such a manner as to support its constitutionality." Corn v. State, 332 So. 2d 4, 8 (Fla. 1976).

## I. Overbreadth

"The First Amendment, applicable to the States through the Fourteenth Amendment, provides that 'Congress shall make no law . . . abridging the freedom of speech.'" Black, 538 U.S. at 358, 123 S. Ct. at 1547 (alteration in original). Consequently, "[w]hen a statute encroaches upon activity protected by the First Amendment, the challenger may bring a 'substantial overbreadth' facial challenge." Ex parte Bradshaw, 501 S.W.3d 665, 671 (Tex. Ct. App. 2016) (citing United States v. Stevens, 559 U.S. 460, 473, 130 S. Ct. 1577, 1587, 176 L. Ed. 2d 435 (2010)). The First Amendment overbreadth doctrine "represents a departure from the traditional rule that a person may not challenge a statute on the ground that it might be applied unconstitutionally in circumstances other than those before the court." Bates v. State Bar of Ariz., 433 U.S. 350, 380, 97 S. Ct. 2691, 2707, 53 L. Ed. 2d 810 (1977) (citations omitted). Accordingly, the doctrine allows a litigant to raise a facial violation, even if the conduct of the party would not enjoy

protection under the First Amendment. Broadrick v. Oklahoma, 413 U.S. 601, 615, 93 S. Ct. 2908, 2918, 37 L. Ed. 2d 830 (1973).

Under certain circumstances, even where there is some legitimate application and the parties were not engaged in activity protected by the First Amendment, a statute may be declared facially unconstitutional. See Osborne v. Ohio, 495 U.S. 103, 112 n.8, 110 S. Ct. 1691, 1697 n.8, 109 L. Ed. 2d 98 (1990) ("[D]efendants [are permitted] to challenge statutes on overbreadth grounds, regardless of whether the individual defendant's conduct is constitutionally protected."). In order to succeed in an overbreadth challenge, the litigant "must demonstrate from the text of [the statute] and from actual fact that a substantial number of instances exist in which the [statute] cannot be applied constitutionally." N.Y. State Club Ass'n, Inc. v. City of N.Y., 487 U.S. 1, 14, 108 S. Ct. 2225, 2234, 101 L. Ed. 2d 1 (1988). "Whether a regulation is overbroad depends on its application 'to real-world conduct, not fanciful hypotheticals.'" Hoglan v. Robinson, No. 7:15-cv-00694, at *4 (W.D. VA. Mar. 30, 2018) (quoting Stevens, 559 U.S. at 485, 130 S. Ct. at 1594 (Alito, J., dissenting)).

"The overbreadth doctrine is 'strong medicine' that is used 'sparingly and only as a last resort.'" N.Y. State Club Ass'n, Inc., 487 U.S. at 14, 108 S. Ct. at 2234 (quoting Broadrick, 413 U.S. at 613, 93 S. Ct. at 2916).

7

Indeed, as was so aptly observed by one of the county court judges below, "[p]rior to finding a law overbroad on its face, a court should 'first determine that the regulation is not "susceptible to a reasonable limiting construction."'" O.P-G. v. State, 290 So. 3d 950, 959 (Fla. 3d DCA 2019) (citation omitted).

## II.   True Threats

"[A]s a general matter, 'the First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content.'" Ashcroft v. Am. Civil Liberties Union, 535 U.S. 564, 573, 122 S. Ct. 1700, 1707, 152 L. Ed. 2d 771 (2002) (citation omitted).   Consequently, "the Constitution 'demands that content-based restrictions on speech be presumed invalid . . . and that the Government bear the burden of showing their constitutionality.'" United States v. Alvarez, 567 U.S. 709, 716-17, 132 S. Ct. 2537, 2544, 183 L. Ed. 2d 574 (2012) (citation omitted) (alteration in original).

Nonetheless, "[f]rom 1791 to the present, . . . our society, like other free but civilized societies, has permitted restrictions upon the content of speech in a few limited areas." R.A.V. v. City of St. Paul, 505 U.S. 377, 382-83, 112 S. Ct. 2538, 2542-43, 120 L. Ed. 2d 305 (1992).   These limited categories consist of "well-defined and narrowly limited classes of speech" or expressive conduct which are "of such slight social value as a step to truth

8

that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality." Chaplinsky v. New Hampshire, 315 U.S. 568, 571-72, 62 S. Ct. 766, 769, 86 L. Ed. 1031 (1942).

### a. Watts v. United States, 394 U.S. 705 (1969).

As relevant to this case, states are free to ban speech amounting to a "true threat" without running afoul of the First Amendment. Black, 538 U.S. at 359, 123 S. Ct. at 1547 (citations omitted). The true threats doctrine finds its genesis in the oft-cited Supreme Court case of Watts v. United States, 394 U.S. 705, 89 S. Ct. 1399, 22 L. Ed. 2d 664 (1969). There, during the Vietnam War, while attending a protest, Watts stated he would resist the draft and, "[i]f they ever make me carry a rifle the first man I want to get in my sights is L.B.J." Id. at 706, 89 S. Ct. at 1401. Watts was charged and convicted under a statute prohibiting any individual from "knowingly and willfully" making "any threat to take the life or to inflict bodily harm upon the President of the United States." Id. at 705, 89 S. Ct. at 1400.

The Court determined the relevant statute was "certainly . . . constitutional on its face," given the Nation's "valid, even an overwhelming, interest in protecting the safety of its Chief Executive and in allowing him to perform his duties without interference from threats of physical violence." Id. at 707, 89 S. Ct. at 1401. Nevertheless, as the statute "ma[de] criminal a

9

form of pure speech," it had to be "interpreted with the commands of the First Amendment clearly in mind." Id. at 707, 89 S. Ct. at 1401. Thus, "a threat must be distinguished from what is constitutionally protected speech." Id. at 707, 89 S. Ct. at 1401. The Court ultimately concluded Watts's statement, "[t]aken in context," including its "expressly conditional nature . . . and the reaction of the listeners," was mere political hyperbole that did not qualify as a "true 'threat'" under the statute. Id. at 708, 89 S. Ct. at 1402.

### b. Virginia v. Black, 538 U.S. 343 (2003).

Over three decades later, in Virginia v. Black, the Court reaffirmed the proposition that among the categories of speech states may regulate, consistent with the First Amendment, are true threats. 538 U.S. at 359, 123 S. Ct. at 1547 (citations omitted). At issue was the constitutionality of a provision of a Virginia statute proscribing the burning of a cross with "an intent to intimidate a person or group of persons." Id. at 347, 123 S. Ct. at 1541 (citation omitted). Defining true threats as encompassing "those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals," the Court upheld the statutory provision. Id. at 359, 123 S. Ct. at 1548 (citation omitted). The Court explained the speaker "need not actually intend to carry out the threat," as the prohibition on such threats

10

"'protect[s] individuals from the fear of violence' and 'from the disruption fear engenders,' in addition to protecting people 'from the possibility that the threatened violence will occur.'" Id. at 360, 123 S. Ct. at 1548 (alteration in original) (citation omitted).

A majority determined, "[a] ban on cross burning carried out with the intent to intimidate . . . is proscribable under the First Amendment, " and "the First Amendment permits content discrimination 'based on the very reasons why the particular class of speech at issue . . . is proscribable.'"[3] Id. at 362-63, 123 S. Ct. at 1549-50 (fourth alteration in original) (citation omitted).

### c. **Elonis v. United States, 575 U.S. 723 (2015).**

More recently, the Court decided Elonis v. United States, 575 U.S. 723, 135 S. Ct. 2001, 192 L. Ed. 2d 1 (2015). There, Elonis was charged with violating a federal statute, criminalizing the transmission of any communication containing a threat to kidnap or injure another. The statute lacked a mens rea requirement.

---

[3] A plurality of a fracture opinion by the Court further found a prima facie provision of the statute stating "[t]he burning of a cross, by itself, is sufficient evidence from which [the jury could] infer the required intent" to be unconstitutional as it allowed the government to "arrest, prosecute, and convict a person solely on the fact of cross burning itself." Black, 538 U.S. at 364-65, 123 S. Ct. at 1550-51.

11

At trial, the court rejected Elonis's request for a special instruction that would have required the Government to prove he specifically intended to threaten his targets.  Id. at 723, 135 S. Ct. at 2007.  His request was denied, and the jury was instructed,

> A statement is a true threat when a defendant intentionally makes a statement in a context or under such circumstances wherein a reasonable person would foresee that the statement would be interpreted by those to whom the maker communicates the statement as a serious expression of an intention to inflict bodily injury or take the life of an individual.

Id. at 723, 135 S. Ct. at 2007.  This rejection enabled the Government to inform the jurors that Elonis's subjective intent was irrelevant.  Elonis was convicted.

The Supreme Court considered the adequacy of the instruction in light of Morissette v. United States, 342 U.S. 246, 72 S. Ct. 240, 96 L. Ed. 288 (1952), and the fact "that a defendant must be 'blameworthy in mind' before . . . found guilty."  Elonis, 575 U.S. at 723, 135 S. Ct. at 2009.  Concluding "[t]he jury was instructed that the Government need prove only that a reasonable person would regard Elonis's communications as threats, and . . . 'wrongdoing must be conscious to be criminal,'" the Court overturned the conviction.  Id. at 723, 135 S. Ct. at 2012 (citation omitted).  It further noted the requisite scienter "is satisfied if the defendant transmits a communication

for the purpose of issuing a threat, or with knowledge that the communication will be viewed as a threat." Id. at 723, 135 S. Ct. at 2012.

## III. Section 836.12, Florida Statutes

It is against this background that we examine whether the circuit court departed from the essential requirements of law in deeming the text of the challenged statute constitutionally compliant. Section 836.12(2), Florida Statutes, signed into law in 2016, provides, in relevant part:

> Any person who threatens a law enforcement officer, a state attorney, an assistant state attorney, a firefighter, a judge, or an elected official, or a family member of such persons, with death or serious bodily harm commits a misdemeanor of the first degree, punishable as provided in s. 775.082 or s. 775.083.

Following the statutory enactment, our high court approved standard jury instructions for use in prosecuting violators.[4] See In re Standard Jury Instructions in Criminal Cases–Report 2016-06, 217 So. 3d 965 (Fla. 2017). Pursuant to the instructions, the State is charged with proving the accused "knew that the person threatened was within the class of protected persons identified in the statute." Id. at 965.

We agree with the broad proposition advanced by petitioners that, in the context of a statute proscribing threats, proof of scienter is necessary to

---

[4] In adhering to this body of precedent, we reject the contention that approval of Florida Standard Jury Instruction 8.22(a) constitutes an infringement on the separation of powers doctrine.

13

guard against the impermissible regulation of the lawful exercise of constitutionally protected speech. Without such proof, remarks made in jest or mere puffery, political hyperbole, or involuntary communications could conceivably subject an accused to prosecution. See Brandenburg v. Ohio, 395 U.S. 444, 448, 89 S. Ct. 1827, 1830, 23 L. Ed. 2d 430 (1969) (finding advocating violence as moral propriety or moral necessity "is not the same as preparing a group for violent action and steeling it to such action") (quoting Noto v. United States, 367 U.S. 290, 298, 81 S. Ct. 1517, 1521, 6 L. Ed. 2d 836 (1961)). Hence, here, the phrasing of the statute is "hardly ideal." Carrell v. United States, 165 A.3d 314, 319 (D.C. Ct. App. 2017) (citation omitted). Nonetheless, this does not compel a finding that the circuit court appellate panel strayed from clearly established precedent. See State Farm Fla. Ins. Co. v. Sanders, 45 Fla. L. Weekly D870, D871 (Fla. April 15, 2020) ("A classic example of a departure from the essential requirements of the law is a trial court's failure to follow binding precedent.") (citing State v. Walsh, 204 So. 3d 169 (Fla. 1st DCA 2016); Powell v. City of Sarasota, 857 So. 2d 326 (Fla. 2d DCA 2003)).

"For several centuries (at least since 1600) the different common law crimes have been so defined as to require, for guilt, that the defendant's acts or omissions be accompanied by one or more of the various types of fault

14

(intention, knowledge, recklessness or—more rarely—negligence)." Elonis, 575 U.S. at 723, 135 S. Ct. at 2015 (Alito, J., concurring in part and dissenting in part) (quoting 1 W. LaFave, Substantive Criminal Law § 5.5 (2003)). However, the "mere omission from a criminal enactment of any mention of criminal intent" is not interpreted as dispensing with such a requirement. Elonis, 575 U.S. at 723, 135 S. Ct. at 2009 (citation omitted); see N.D. v. State, 45 Fla. L. Weekly D2478, D2479 (Fla. 3d DCA Nov. 4, 2020) ("[B]ecause 'guilty knowledge or mens rea was a necessary element in the proof of every crime' at common law, it is presumed that the legislature also intends to include a guilty knowledge element in its criminal statutes, absent an express statement to the contrary.") (quoting State v. Giorgetti, 868 So. 2d 512, 515 (Fla. 2004)). Rather, "criminal statutes [are construed] 'to include broadly applicable scienter requirements, even where the statute . . . does not contain them,'" Elonis, 575 U.S. at 723, 135 S. Ct. at 2009 (quoting United States v. X-Citement Video, Inc., 513 U.S. 64, 70, 115 S. Ct. 464, 468, 130 L. Ed. 2d 372 (1994)), "so as to avoid the statutes' potentially overbroad reach." Osborne, 495 U.S. at 119, 110 S. Ct. at 1701; see also United States v. Balint, 258 U.S. 250, 251, 42 S. Ct. 301, 302, 66 L. Ed. 604 (1922) ("[T]he general rule at common law was that the scienter was a necessary element in the indictment and proof of every crime.").

15

Accordingly, the court is charged with reading that mens rea "necessary to separate wrongful conduct from 'otherwise innocent conduct'" into the statute. Carter v. United States, 530 U.S. 255, 269, 120 S. Ct. 2159, 2169, 147 L. Ed. 2d 203 (2000) (citation omitted).

"[I]n light of the[se] background rules of the common law, in which the requirement of some mens rea for a crime is firmly embedded," here, the failure to specify the same cannot be deemed, in and of itself, fatal. Staples v. United States, 511 U.S. 600, 605, 114 S. Ct. 1793, 1797, 128 L. Ed. 2d 608 (1994) (internal citation omitted); see also § 775.01, Fla. Stat. ("The common law of England in relation to crimes, except so far as the same relates to the modes and degrees of punishment, shall be of full force in this state where there is no existing provision by statute on the subject."). Instead, we must determine whether the circuit court acted within the bounds of the law in tacitly determining the statute is subject to a constitutionally viable limiting construction.

Under the plain language of the statue, only a perpetrator who "threatens" another with "death or serious bodily harm" is subject to punishment. § 836.12(2), Fla. Stat. By criminalizing only communications of unlawful violence, the legislature clearly endeavored to remove protected

16

speech from the sweep of the statute. However, the word "threaten" remains undefined.

We are cognizant that "[t]he word 'threat' does not itself contain a mens rea requirement." Elonis, 575 U.S. 723, 135 S. Ct. at 2019 (Thomas, J., dissenting). Nonetheless, in the context presented here, the word lends itself to a definition that renders the statute susceptible to a limited construction that removes any chilling effect on constitutionally protected expression.

"[W]here a statute does not specifically define words of common usage, such words are construed in their plain and ordinary sense." State v. Brake, 796 So. 2d 522, 528 (Fla. 2001) (citing State v. Mitro, 700 So. 2d 643, 645 (Fla. 1997)). Although "threaten" is arguably subject to a myriad of varied and nuanced definitions, as was recently observed by our sister court in Puy v. State, 294 So. 3d 930, 933 (Fla. 4th DCA 2020), "Merriam-Webster online dictionary's first definition for 'threat' is 'an expression of intention to inflict evil, injury, or damage.'" (Quoting Threat, Merriam-Webster, https://www.merriam-webster.com/dictionary/threat (last visited Apr. 13, 2020)); see also Threat, Webster's Third New International Dictionary (2002) (defining "threat" as "an expression of an intention to inflict evil, injury, or damage"). There, the Fourth District Court of Appeal expounded upon the meaning to preserve the constitutionality of section 836.10, Florida Statutes.

17

The court found that "whether a written communication constitutes a threat under section 836.10 depends on whether the message was 'sufficient to cause alarm in reasonable persons.'" Puy, 294 So. 3d at 933 (quoting Smith v. State, 532 So. 2d 50, 53 (Fla. 2d DCA 1988)).

In the same vein, Black's Law Dictionary defines "threat" as a "communicated intent to inflict harm or loss on another or on another's property, esp. one that might diminish a person's freedom to act voluntarily or with lawful consent; a declaration, express or implied, of an intent to inflict loss or pain on another." Threat, Black's Law Dictionary (11th ed. 2019). Garner's Dictionary of Legal Usage equates "threaten" with menace and defines both words as "to project to another person potential or even imminent harm [usually] by words, actions, posture, or facial expressions." Threaten, Garner's Dictionary of Legal Usage (3d ed. 2011). Lastly, the American Heritage Dictionary defines "threat" as "[a]n expression of an intention to inflict pain, harm, or punishment," Threat, The American Heritage Dictionary (5th ed. 2020), and Lexico, an online dictionary powered by Oxford, describes the word as "[a] statement of an intention to inflict pain, injury, damage, or other hostile action on someone in retribution for something done or not done." Threat, Lexico powered by Oxford https://www.lexico.com/definition/threat (last visited Jan. 20, 2021).

18

Although by no means comprising an exhaustive list, woven through the fabric of all cited definitions is a common thread of some element of volition, namely a communicated intent to "inflict harm," consistent with the body of law governing true threats. Thus, here, particularly in light of the fact the legislature is presumed to be aware of preexisting Supreme Court precedent when passing new legislation, the term threaten must be narrowly construed as encompassing only true threats, defined as "those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual." Black, 538 U.S. at 359, 123 S. Ct. at 1548 (citations omitted); see also Adler-Built Indus., Inc. v. Metro. Dade Cnty., 231 So. 2d 197, 199 (Fla. 1970) ("The Legislature is presumed to be acquainted with judicial decisions on the subject concerning which it subsequently enacts a statute.") (citation omitted). This reading supplies the omitted mens rea element, separating wrongful from innocent conduct and shielding otherwise-protected speech, including mere hyperbole, exaggeration, or humor, from criminal liability. Carter, 530 U.S. at 269, 120 S. Ct. at 2169 (citation omitted).

So construed, the failure by the legislature to specify scienter does not conflict with the First Amendment. See United States v. Payne, No. 2:16-cr-00046-GMN-PAL, at *9 (D. Nev. Jan. 3, 2017) ("[B]ecause courts routinely

19

construe criminal threat statutes to apply only to true threats" the fact that a statute, such as this one, "does not contain statutory language distinguishing between threats and 'true threats' . . . does not render [the statute] overbroad.") (citations omitted). Thus, we find no "violation of a clearly established principle of law resulting in a miscarriage of justice" in the decisions by the circuit court. Omnipoint Holdings, Inc., 863 So. 2d at 199 (citation omitted); see N.D., 45 Fla. L. Weekly at D2478 ("As threats to injure or kill are not constitutionally protected, a defendant's First Amendment rights are not violated by laws prohibiting such threats.") (citation omitted). Hence, petitioners have failed to meet the standard for issuance of the writs.

Petitions denied.