DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**T.R.W.,** a child,
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

Nos. 4D21-2396, 4D21-2398 and 4D21-2399

[February 15, 2023]

Consolidated appeals from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Cymonie S. Rowe, Judge; L.T. Case Nos. 50-2020-CJ-000342-XXXX-MB, 50-2020-CJ-000447-XXXX-MB, and 50-2021-CJ-00248-XXXX-MB.

Carey Haughwout, Public Defender, and Logan T. Mohs, Assistant Public Defender, West Palm Beach, for appellant.

Ashley Moody, Attorney General, Tallahassee, and Mitchell A. Egber, Assistant Attorney General, West Palm Beach, for appellee.

WARNER, J.

T.R.W. appeals the judgment of delinquency and disposition in three cases. In one, case no. 4D21-2399, the trial court adjudicated T.R.W. delinquent based upon a violation of section 836.10, Florida Statutes (2020), for communicating a written threat to do bodily harm or commit a mass shooting. In the other two, case nos. 4D21-2396 and 4D21-2398, the court determined that by committing the violation of section 836.10, T.R.W. had violated the orders of probation in the underlying delinquency proceedings. The court also found that T.R.W. violated his probation in both cases by failing to provide written confirmation of community service hours that he had been ordered to perform.

While we find competent substantial evidence to support the trial court's finding that T.R.W. sent the messages, we conclude the court erred in determining that T.R.W.'s intent was irrelevant to the violation of the statute, as mens rea is an element of all crimes unless specifically excluded

by statute. The court also erred in finding that T.R.W. violated his probation by failing to provide written confirmation of community service hours because the State did not charge him with this violation. We thus reverse and remand for a new adjudicatory hearing on the principal charge and the revocation of probation and reverse on the technical violation as to community service hours.

## Facts

T.R.W. was on probation for two separate burglary charges. As part of the conditions of probation, he was ordered to obey all laws, perform twenty-five hours of community service at the rate of five hours per month, and provide written proof of the service hours performed each month.

While T.R.W. was on probation, the State charged him with violating section 836.10. The State also charged T.R.W. with violating both of his probation orders for failing to obey the law in communicating the threats in violation of section 836.10. In addition, the State alleged that appellant had violated the probation orders by failing to perform his required community service hours.

The charges for violation of section 836.10 arose out of texts sent by T.R.W. to C.R., a school classmate. C.R. testified during trial that she had exchanged about twenty Instagram messages with T.R.W., whose username was "T[]_gostupid." On January 17, 2021, she received a series of messages from T.R.W. She was 100% sure that the texts were from T.R.W. because they started out similar to conversations that she had in the past with him over Instagram. In one message, he wrote that "at this point I might just start killing people."

The messages continued:

> [T.R.W.:]  starting wit my homeboys
> and then the school
>
> C.R.: no
>
> [T.R.W.:] let me stop its just a prank
>
> C.R.: [T.R.W.] i'm scared for u
>
> [T.R.W.:] why

2

C.R.: bc i can't tell if it's a joke or not

[T.R.W.:] no but fr i dead killed somebody

C.R.: omg

C.R. testified that she was afraid when she read appellant's messages, even though she had never been afraid before of T.R.W. M.S., who was C.R.'s friend, was also present and looking at the messages on C.R.'s phone and viewed the texts as threats of violence.

After C.R. reported the messages to her school counselor, law enforcement became involved. The officers investigated, including interviewing T.R.W. who denied sending the messages. T.R.W. told an officer that he had given his Instagram password to thirty other people, but he was unable to provide the officer with the name of any person that he claimed had his password.

In his own defense, T.R.W. testified that he did not have possession of his phone at the time the messages were sent to C.R., and he did not write the subject messages. On the date in question, he was playing basketball with his brother, who was home from military service. His mother testified and corroborated T.R.W.'s testimony.

As to community service, T.R.W. testified that he had performed community service hours. Although he did not turn in records for two months, he did turn in records for a third month.

T.R.W.'s probation officer testified that she did not have written documentation that T.R.W. had performed five hours of service per month as required by the probation order, which she termed a technical violation. She admitted that he had performed some community service, but not all twenty-five hours as she had not received documentation of all of it. She testified that sometimes the community service program providers failed to send certificates of completion, and if T.R.W. had attended the program to which she had referred him, he would not be in violation. She also admitted to having had a discussion with T.R.W.'s mother about his community service. The probation officer testified that the mother told her that T.R.W. had completed the program and had completed his service hours.

3

The defense moved for a judgment of acquittal at the close of the State's case and again at the close of all the evidence. The trial court denied both motions.

The trial court entered a single amended order as to all three cases. Based on the testimony at the trial, the court found that the State proved the elements of section 836.10, Florida Statutes, beyond a reasonable doubt and that T.R.W. violated the terms of his probation by committing the offense. The court ruled that section 836.10(1), did not require "the actual intent to do harm or the ability to carry out the threat," citing *Saidi v. State*, 845 So. 2d 1022, 1027 (Fla. 5th DCA 2003). The court found that T.R.W. sent the communications threatening to shoot individuals and the school, and T.R.W.'s testimony claiming that an unknown person may have sent the messages was "unbelievable." Acknowledging T.R.W. argued that the statements were a hoax or prank,[1] the court discounted that argument, stating: "Since the Youth's intent is not part of the consideration, coupled with the objective reading of the statements, the Youth committed the crime as charged."

With respect to the violation of probation for community service, the court noted T.R.W. admitted that he had prior knowledge of the rules of his probation. Acknowledging that the probation order required T.R.W. to perform five hours monthly, the court found the evidence conflicting as to whether T.R.W. actually performed the community service. Without making a finding as to whether the community service was completed, the court determined that T.R.W. did not provide written proof of completion of community service. Accordingly, the court concluded that the preponderance of the evidence supported the State's charge that T.R.W. had willfully and substantially violated the terms of his probation by failing to provide written proof of completion of his hours of service.

On the violations of probation, the court adjudicated T.R.W. delinquent of the underlying offenses and imposed probation. As to the main charge of violating section 836.10, the court withheld adjudication and imposed probation. All probation sentences were to run concurrently. T.R.W. appeals all three orders.

---

[1] T.R.W. made this argument based on testimony by C.R. that he and his friends would joke about shooting up the school and based on the text message that "its just a prank."

## Analysis

T.R.W. raises three issues on appeal. First, he claims that the evidence was insufficient to prove that he sent the text messages when he had given his password to access his Instagram account to many other people. We find no merit in this issue and do not address it further.[2] Second, he maintains that the court erred in concluding that his intent was immaterial to the determination of whether he had violated the statute. Finally, he claims that the court fundamentally erred when it determined that he violated his probation by failing to provide written documentation of his community service hours. We address these issues and conclude that both require reversal.

## Failure to Consider Mens Rea in Finding a Violation of Florida Statute Section 836.10

In finding T.R.W. violated section 836.10, the trial court rejected any consideration of T.R.W.'s intent in sending the texts. The trial court concluded that whether a threat was made must be analyzed based upon whether a reasonable person would perceive the communication as a threat, relying on *Smith v. State*, 532 So. 2d 50 (Fla. 2d DCA 1988). T.R.W. contends that his intent that the words be taken as a threat is essential, without which the element of mens rea is absent.

*Smith* considered an earlier version of section 836.10, Florida Statutes (1987), which made it a felony to send a communication threatening to kill or injure the recipient or a member of the recipient's family. 532 So. 2d at 52-53. The defendant had sent letters, which appeared to be on official stationery, to the wives of the local judiciary and attorneys, stating that the stationery on which the letters were written contained a lethal toxin. *Id.* at 52. Several recipients expressed considerable angst after receiving the letters, but the defendant contended that the entire incident was a hoax. *Id.*

On the question of whether the evidence was sufficient to convict, the *Smith* court disregarded the defendant's claim that the letter was a hoax, noting, "[w]ith any offense, however, involving or resembling extortion, and Smith's actions may be so characterized, neither the actual intent to do harm nor the ability to carry out the threats is an essential element." *Id.*

---

[2] As demonstrated by the facts set forth in the opinion, the trial court had abundant evidence on which to base its finding that T.R.W. sent the messages.

*Smith* determined the jury's finding that the threats "were sufficient to cause alarm in reasonable persons[]" was supported by the victims' fearful reactions. 532 So. 2d at 53. In *State v. Cowart*, 301 So. 3d 332 (Fla. 5th DCA 2020), the Fifth District applied this proposition to a perceived threat sent over Snapchat. *Id.* at 335 (finding "the State made a prima facie showing that the [communication] was a threat because it was 'sufficient to cause alarm in reasonable persons'") (quoting *Smith*, 532 So. 2d at 53).

Section 836.10(1), Florida Statutes (2020), provided:

> Any person who writes or composes and also sends or procures the sending of any letter, inscribed communication, or electronic communication, whether such letter or communication be signed or anonymous, to any person, containing a threat to kill or to do bodily injury to the person to whom such letter or communication is sent, or a threat to kill or do bodily injury to any member of the family of the person to whom such letter or communication is sent, or any person who makes, posts, or transmits a threat in a writing or other record, including an electronic record, to conduct a mass shooting or an act of terrorism, in any manner that would allow another person to view the threat, commits a felony of the second degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.

§ 836.10(1), Fla. Stat. (2020).[3] As we noted in *Puy v. State*, 294 So. 3d 930, 933 (Fla. 4th DCA 2020), section 836.10 does not define "threat."

In *Puy*, we considered whether section 836.10 was vague and ambiguous as to what constituted a threat. The appellant was charged under the statute after he posted a picture of himself on social media with

---

[3] Section 836.10 was amended in 2021, making primarily format changes to the statute. Section 836.10(2) currently reads:

> It is unlawful for any person to send, post, or transmit, or procure the sending, posting, or transmission of, a writing or other record, including an electronic record, in any manner in which it may be viewed by another person, when in such writing or record the person makes a threat to:

> (a) Kill or to do bodily harm to another person; or

> (b) Conduct a mass shooting or an act of terrorism.

the caption "On my way!  School shooter."  *Puy*, 294 So. 3d at 931.  The appellant moved to dismiss, arguing this message was too vague to constitute a threat.  *Id.*  In affirming the denial of the motion to dismiss the charge, we applied the "plain meaning" of the word "threat" under the statute by quoting the dictionary definition: "an expression of intention to inflict evil, injury, or damage."  *Id.* at 933 (quoting *Threat*, Merriam-Webster, https://www.merriam-webster.com/dictionary/threat (last visited Jan. 25, 2023)).  We then relied on *Smith* to hold that "whether a written communication constitutes a threat under section 836.10 depends on whether the message was 'sufficient to cause alarm in reasonable persons.'"  *Puy*, 294 So. 3d at 933 (quoting *Smith*, 532 So. 2d at 53).  *Puy* did not discuss mens rea as a necessary element of violating section 836.10, other than to conclude the word "threat" required an objective assessment of the communication's effect on a reasonable person.

The mens rea element of section 836.10 was addressed in part by *N.D. v. State,* 315 So. 3d 102 (Fla. 3d DCA 2020).  There, the appellant argued that section 836.10 lacked any subjective intent element and as a result the statute failed to distinguish between acts of merely venting anger and actual threats to intimidate and do violence.  *Id.* at 104–05.  The *N.D.* court noted that section 836.10 did not specifically include a mens rea element but determined the statute must be construed to include mens rea.  *Id.* at 105 (citing *State v. Giorgetti*, 868 So. 2d 512, 515–16 (Fla. 2004)).  After recognizing that mens rea must be included as an element of section 836.10, the court then applied the reasonableness test of *Smith* and *Cowart* to conclude that the juvenile's threatening language was sufficient to warrant the trial court placing him in a probation program.  *Id.* at 106; *see also Chicone v. State,* 684 So. 2d 736, 743 (Fla. 1996) ("The United States Supreme Court has stated that offenses that require no mens rea generally are disfavored, and has suggested that some indication of legislative intent, express or implied, is required to dispense with mens rea as an element of a crime.") (citing *Staples v. United States*, 511 U.S. 600, 605–06 (1994)), *superseded by statute*, § 893.101, Fla. Stat. (2011), *as recognized in State v. Adkins*, 96 So. 3d 412 (Fla. 2012).

In considering mens rea in a similar statute, section 836.12, Florida Statutes (2021), the Third District concluded that the intent component must be read into the statute.  *Romero v. State*, 314 So. 3d 699, 706 (Fla. 3d DCA 2021).  Section 836.12(2) provides criminal sanctions for "[a]ny person who threatens a law enforcement officer, a state attorney, an assistant state attorney, a firefighter, a judge, or an elected official, or a family member of such persons, with death or serious bodily harm[.]"  Addressing the petitioner's contention that the statute was overbroad

7

under the First Amendment, the court concluded that the statute was valid and did not reach protected speech. *Romero*, 314 So. 3d at 707. The court adopted a narrower construction of "threat," writing that "the term threaten must be narrowly construed as encompassing only true threats, defined as 'those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual.'" *Id.*

By limiting the statute to "true threats," the court determined that the statute required that the defendant *mean* (intend) to communicate a serious expression of an intent to do violence. In other words, the trier of fact would be required to find that the defendant intended the threat to be taken seriously.

In considering the element of mens rea, *Romero* looked to the Supreme Court's decision in *Elonis v. United States*, 575 U.S. 723 (2015). *Romero* acknowledged that *Elonis* found that the requisite scienter "is satisfied if the defendant transmits a communication for the purpose of issuing a threat, or with knowledge that the communication will be viewed as a threat." *Romero*, 314 So. 3d at 704–05 (quoting *Elonis*, 575 U.S. at 723).

T.R.W. contends that *Elonis* requires the reconsideration of *Smith*, *Cowart*, and *Puy*. The federal statute at issue in *Elonis* criminalized the transmission of any communication containing a threat to injure another. 575 U.S. at 726. At trial, the defendant requested a jury instruction that "the government must prove that he intended to communicate a true threat." *Id.* at 731. The request was denied and the government in closing emphasized that it was irrelevant whether the defendant intended the postings to be threats. *Id.* at 732.

The defendant renewed his challenge to the jury instructions in the Court of Appeals, which held that the law only required the "intent to communicate words that the defendant understands, and that a reasonable person would view as a threat." *Id.*

Upon review, the Supreme Court noted that the statute did not indicate whether the defendant must intend that his communication contain a threat. *Id.* The Court then explained:

> The fact that the statute does not specify any required mental state, however, does not mean that none exists. . . . Although there are exceptions, the "general rule" is that a guilty mind is "a necessary element in the indictment and proof of every

8

crime." *United States v. Balint*, 258 U.S. 250, 251, 42 S. Ct. 301, 66 L. Ed. 604 (1922). We therefore generally "interpret [ ] criminal statutes to include broadly applicable scienter requirements, even where the statute by its terms does not contain them." *United States v. X–Citement Video, Inc.*, 513 U.S. 64, 70, 115 S.Ct. 464, 130 L. Ed. 2d 372 (1994).

*Id.* at 734; *See Rehaif v. United States*, 139 S. Ct. 2191, 2195, 204 L. Ed. 2d 594 (2019) (same).

*Elonis* further explained that a communication should not be determined to be a threat based on whether a reasonable person would view the communication as a threat, stating:

> The parties agree that a defendant under Section 875(c) must know that he is transmitting a communication. But communicating something is not what makes the conduct "wrongful." *Here "the crucial element separating legal innocence from wrongful conduct" is the threatening nature of the communication.* [*X-Citement Video*, 513 U.S.] at 73, 115 S. Ct. 464. *The mental state requirement must therefore apply to the fact that the communication contains a threat.*
>
> [The defendant's] conviction, however, was premised solely on how his posts would be understood by a reasonable person. *Such a "reasonable person" standard is a familiar feature of civil liability in tort law, but is inconsistent with "the conventional requirement for criminal conduct—awareness of some wrongdoing." . . . Having liability turn on whether a "reasonable person" regards the communication as a threat— regardless of what the defendant thinks—"reduces culpability on the all-important element of the crime to negligence,"* [*United States v. Jeffries*, 692 F.3d 473, 484 (6th Cir. 2012)] (Sutton, J., dubitante), and we "have long been reluctant to infer that a negligence standard was intended in criminal statutes," . . . *Under these principles, "what [the defendant] thinks" does matter.*

575 U.S. at 737–38 (emphasis added).

Thus, the Supreme Court concluded that the conviction could not stand because: "the jury was instructed that the Government need prove only that a reasonable person would regard [the defendant's]

communications as threats, and that was error." *Id.* at 740. It concluded that "the mental state requirement in section 875(c) is satisfied if the defendant transmits a communication *for the purpose of issuing a threat, or with knowledge that the communication will be viewed as a threat.*" *Id.* (emphasis added).

Our supreme court has consistently looked to the United States Supreme Court for guidance as to the application of mens rea to criminal statutes. In *Giorgetti*, the court relied on multiple United States Supreme Court opinions to hold that it "will ordinarily presume that the Legislature intends statutes defining a criminal violation to contain a knowledge requirement absent an express indication of a contrary intent." 868 So. 2d at 516. By adhering to the United States Supreme Court view of mens rea, the court concluded:

> In numerous decisions, the U.S. Supreme Court has held that knowledge or mens rea holds a unique place within criminal law, and it must be clear that a legislative body intended to dispense with it before courts will assume it is not required. As noted above, this requirement is little more than a reflection that society ordinarily reserves criminal sanctions for acts of intentional misconduct.

*Id.* at 520.

Following the reasoning of *Elonis*, a mens rea element must be read into section 836.10. A defendant must have intended to make a true threat, namely that he made a communication with the knowledge that it will be viewed as a threat. The trial court in this case considered the youth's intent irrelevant; therefore, based on *Elonis* and *Romero*, the court erred.

We adopt the construction of *Romero* and *Elonis*. In doing so, we do not conflict with *Cowart* and *Puy*, because both were decided on motions to dismiss where determining intent is not a proper subject. *See State v. Major*, 30 So. 3d 608, 610 (Fla. 4th DCA 2010) ("Determining the intent of the defendant should be left to the trier of fact and is therefore not the proper subject of a motion to dismiss.").

On the other hand, *Smith* concluded that the question for the jury under the statute was "whether threatening language reasonably may be construed to evince a serious expression of an intent to do harm," ignoring the defendant's claim that the communications were a hoax. 532 So. 2d

at 53. Thus, *Smith* does not comport with the necessity of finding some level of mens rea in order to sustain the conviction.

We hold that section 836.10 does contain a mens rea component. To prove the commission of a violation of section 836.10, the trier of fact must find that the defendant transmitted a communication for the purpose of issuing a threat, or with knowledge that the communication will be viewed as a threat. As the trial court concluded that the intent of the youth was irrelevant, the court erred.

## Violation for Uncharged Conduct

The State charged T.R.W. with violating his probation by failing to complete his community service hours at the rate of five hours per month. The State did not allege that he failed to provide written documentation of those hours. The trial court did not make a finding that T.R.W. failed to complete his hours. Instead, the court violated his probation because he had failed to provide the written documentation.

"It is a due process violation and fundamental error to revoke probation for violations not alleged in the affidavit of violation of probation." *B.E. v. State*, 115 So. 3d 1038, 1040 (Fla. 4th DCA 2013) (quoting *Howard v. State*, 883 So. 2d 879, 880 (Fla. 4th DCA 2004)); *B.O. v. State*, 25 So. 3d 586, 587 (Fla. 4th DCA 2009).

In *B.E.*, the State filed an affidavit for violation of conditions of probation that alleged that the juvenile "failed to obey all laws" by possessing marijuana and also alleged that the juvenile "failed to obey his parents' reasonable controls" based on an email provided by the juvenile's mother. 115 So. 3d at 1039. At trial, the juvenile's probation officer testified as to two uncharged violations, the juvenile's failure to complete community service hours and failure to complete an anger management program. *Id.* In revoking B.E.'s probation, the trial court included the uncharged violations as grounds for the revocation. *Id.*

On appeal, we reversed, finding that the court committed fundamental error and violated the juvenile's due process by revoking probation for violations not alleged in the affidavit. *Id.* at 1040; *see also B.O.*, 25 So. 3d at 587 (stating "[i]t is . . . settled that due process will not permit a juvenile to be adjudged delinquent on the basis of violations of law not alleged in the petition of delinquency").

In this case, the State charged T.R.W. with failure to complete his community service hours, not the failure to report those hours. While one might infer that T.R.W.'s failure to report the service hours meant that he had also failed to complete them, that inference would deny T.R.W. due process. Because the State had not charged T.R.W. with failure to report his service hours, he was not prepared to mount a full defense to that charge.

The probation officer testified that the program to which she referred T.R.W. for community service usually sent certificates of completion showing the hours completed, but she testified that on occasion she did have to contact the program to obtain the certificates. Had T.R.W. known that the court would consider his failure to document his community service hours as a violation of probation, he could have been prepared to offer evidence that it was the responsibility of the program to send his certificates of completion to the probation officer or he could have obtained the certificates himself to provide to the court.

The trial court determined it could not make a finding that community service hours were not completed, and based upon the probation officer's equivocal testimony, we can understand the court's reluctance to make such a finding. But the court then could not find T.R.W. violated his probation based upon conduct which he was given no notice would be considered.

As the trial court found that the State had not proved the violation charged by the State of failure to complete community service hours, this charge may not be considered again on remand. And we reverse the court's order revoking T.R.W.'s probation based upon the uncharged violation of failure to provide documentation of his community service hours.

## Conclusion

The trial court failed to consider the mens rea element of section 836.10, specifically determining that T.R.W.'s intent was irrelevant. Based upon *Romero* and *Elonis*, section 836.10 must be construed to have an element of intent. We thus reverse the court's order finding T.R.W. guilty on the main charge of violating section 836.10 and revoking his probation on that basis in the two other cases. We remand for the court to reconsider its rulings consistent with this opinion.

12

We reverse the orders revoking probation based upon the failure to document community service hours, as the State had not charged T.R.W. with a violation of probation on that ground.

We certify conflict with *Smith v. State*, 532 So. 2d 50 (Fla. 2d DCA 1988) on the issue of the mens rea required in section 836.10, Florida Statutes. As this issue has arisen in multiple cases due to the posting of messages on social networks, clarity in the correct interpretation of the statute is needed.

*Reversed and remanded; conflict certified.*

DAMOORGIAN and CONNER, JJ., concur.

*　　*　　*

***Not final until disposition of timely filed motion for rehearing.***